SLIP OP. 00-108

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AMMEX, INC., | : | |
| Plaintiff, | : | |
| v. | : | **Before:  WALLACH, Judge**<br>**Court No.:  99-01-00013** |
| UNITED STATES, | : | |
| Defendant. | : | |

Decided August 25, 2000

Steptoe & Johnson LLP (Herbert C. Shelley, Alice A. Kipel, Gregory S. McCue and David N. Tanenbaum), for Plaintiff.

David W. Ogden, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin); Beth C. Brotman, Office of Assistant Chief Counsel, United States Customs Service, of counsel, for Defendant.

## OPINION

## I

## INTRODUCTION

This case is before the court upon the Motion Of Plaintiff Ammex, Inc. For Judgment Upon The Agency Record.  Plaintiff challenges the decision of the U.S. Customs Service ("Customs") not to allow it to sell duty-free gasoline and diesel fuel from its duty-free store in Detroit, Michigan.  For the

reasons stated below, the court finds Custom's decision not to be in accordance with law.


## II

## BACKGROUND

At issue in this case is Plaintiff's challenge of Customs Headquarters Ruling 227385 of February 12, 1998 ("HQ 227385"). In HQ 227385, Customs reaffirmed a 1994 headquarters ruling which found that the activities of duty-free stores should not be extended to cover "unidentifiable fungible" goods, such as gasoline and diesel fuel, when sold on a retail basis. In the 1994 ruling, Customs found, inter alia, that because such merchandise could not be subject to marking or other identification under 19 U.S.C. § 1555(b)(3)(D),[1] Customs would have no practical way of ensuring that the duty-free gasoline was "declared" when vehicles returned to the United States. See Customs Headquarters Ruling 225287 of June 27, 1994 ("HQ 225287"), at 4-5.

In HQ 227385, Customs revisited the issue of duty-free gasoline and diesel sales in light of Plaintiff's request that Customs reconsider its 1994 ruling. Analyzing the legislative history of the Omnibus Trade and Competitiveness Act of 1988, which established legislative guidelines for Customs' administration of duty-free shops, Customs concluded that "the fact that Congress did not specifically reject Customs policy regarding the sale of gasoline by duty-free stores means that Congress did not

---

[1] In relevant part, 19 U.S.C. § 1555(b) (1994), which governs "[d]uty-free sales enterprises," provides as follows:

(3) Each duty-free sales enterprise . . . (D) shall not be required to mark or otherwise place a distinguishing identifier on individual items of merchandise to indicate that the items were sold by a duty-free sales enterprise, unless the Secretary finds a pattern in which such items are being brought back into the customs territory without declaration.

object to such practice." HQ 227385 at 5. Thus, it reasoned, "in holding that gasoline and diesel fuel

may not be sold by duty-free stores, it was proper to follow the precedent established by ruling letter

200396." Id. In Ruling Letter 200396, the Assistant Commissioner of Customs' Office of Regulations

and Rulings, Leonard Lehman, held that the activities of duty-free stores could not be extended to

unidentifiable fungibles, such as gasoline sold on a retail basis, since Customs would have no practical

way of ensuring that the gasoline was declared when it was returned to the United States. Customs

Ruling Letter 200396 of October 30, 1972.[2]

In its 1998 ruling, Customs also rejected Plaintiff's argument that, in allowing U.S. residents to

apply merchandise purchased from a U.S. duty-free store against their $400 personal duty exemption

allowance, the Miscellaneous Trade and Technical Corrections Act of 1996 rendered Ruling Letter

200396 and HQ 225287 obsolete. Besides pointing to the lack of any explicit Congressional intent to

overturn these determinations, Customs observed that

> the eligibility for a duty exemption does not exempt the imported merchandise from
> being subject to other customs laws. The exemption from duty depends on the status
> of the individual and the circumstances regarding the exportation of the goods, the time
> spent out of the United States, and the frequency of the claims for eligibility. In order to
> administer those requirements, the need for simple effective controls has not been
> lessened by the 1996 statutory change.

HQ 227385 at 7.

By letter dated May 12, 1998, Ammex, Inc. ("Ammex") attempted to protest HQ 227385

under 19 U.S.C. § 1514(a) (1994). On July 9, 1998, Customs ruled that HQ 227385 was not

---

[2] Ruling Letter 200396 was also cited approvingly and quoted in HR 225287. See HQ
225287 at 3 and 5.

protestable under this provision, since HQ 227385 did not require Ammex to make any payment or cause an assessment on any kind.  See Customs Headquarters Ruling 228021 of July 9, 1998. Thereafter, Plaintiff filed its Complaint in this matter on January 12, 1999, timely putting its challenge to HQ 227385 before this court.  After considering various motions by Plaintiff to either supplement the administrative record in this case and/or conduct limited discovery,[3] the court heard oral argument on August 16, 2000.

The court has jurisdiction under 28 U.S.C. § 1581(i) (1994).  See Duty Free Int'l, Inc. v. United States, 17 CIT 1425, 1425 (1993), aff'd 88 F.3d 1046 (Fed. Cir. 1996).[4]

---

[3]  See Ammex, Inc. v. United States, 62 F. Supp.2d 1148 (CIT 1999) (granting in part and denying in part Plaintiff's motion for discovery); the court's Order dated December 6, 1999 (granting Plaintiff's unopposed motion for additional discovery); and Ammex, Inc. v. United States, 86 F. Supp.2d 1278 (CIT 1999) (denying Plaintiff's motion to supplement the administrative record and seek additional discovery).

[4]  Both parties agree that jurisdiction rests under § 1581(i), which provides this court with jurisdiction over "any civil action . . . that arises out of any law . . .  providing for- (1) revenue from imports or tonnage; (2) tariffs . . . on the importation of merchandise for reasons other than the raising of revenue;(3) embargoes or other quantitative restrictions . . . for reasons other than the protection of the public health or safety; or (4) administration and enforcement with respect to [such] matters . . . ." In its brief, however, Plaintiff also alleges jurisdiction under § 1581(h), which allows for certain pre-importation rulings where, inter alia, an importer "demonstrates . . . that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to . . . importation."  Although Defendant argued, and Plaintiff conceded at oral argument, that § 1581(h) did not lie in this case, the court is constrained to independently determine whether any other basis for jurisdiction supersedes § 1581(i). See NEC Corp. v. United States, 151 F.3d 1361, 1368 (Fed. Cir. 1998) (finding jurisdiction under § 1581(i) "available only when jurisdiction under another subsection of 1581 is either unavailable or, if available, 'manifestly inadequate'").

To show irreparable harm for purposes of § 1581(h), Plaintiff submitted the affidavit of Mr. Francois Levesque, President of Ammex, Inc., which states that Ammex has "sustained significant financial losses . . . through the loss of duty-free gasoline and diesel fuel sales."  Mr. Levesque's affidavit, however, lacks any foundational basis for this conclusion, as there is no indication that he

## III

## THE COURT SHALL HOLD UNLAWFUL AGENCY ACTION
## THAT IS ARBITRARY, CAPRICIOUS, AN ABUSE OF
## DISCRETION, OR NOT IN ACCORDANCE WITH LAW.

28 U.S.C. § 2640(e) (1994) provides that "[i]n any civil action not specified in this section, the [court] shall review the matter as provided in [5 U.S.C. § 706]."  In turn, 5 U.S.C. § 706(2)(A) (1994) provides, in relevant part, that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions of law found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  The scope of the court's review is limited to the "whole record or those parts of it cited by a party."  5 U.S.C. § 706 (1994) (emphasis added); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) (stating that a review of the "whole record" under § 706 "is to be based on the full administrative record that was before the Secretary at the time he made his decision").

---

conducted a review of admissible evidence and was qualified to reach conclusions about it.  See USCIT R. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").  As Plaintiff has not provided any other relevant evidence, it has not demonstrated irreparable harm for purposes of § 1581(h).  Compare Holford USA Ltd. Inc. v. United States, 19 CIT 1486, 1492, 912 F. Supp. 555, 560 (1995) (holding that affidavits, plus other supporting materials, adequately demonstrated irreparable harm).  Accordingly, because the other provisions of § 1581 (§ 1581(a)-(c)) are inapposite to Plaintiff's claim, the court finds jurisdiction proper under § 1581(i).

**IV**

**CUSTOMS' DECISION TO PROHIBIT AMMEX FROM SELLING DUTY-FREE
GASOLINE AND DIESEL FUEL IS NOT IN ACCORDANCE WITH LAW.**

Plaintiff first argues that Customs' decision to prohibit Ammex from selling duty-free gasoline and diesel fuel violates 19 U.S.C. § 1557(a)(1) (1994), which allows "[a]ny merchandise subject to duty, with the exception of perishable articles and explosive substances" to be entered and withdrawn (for exportation) from bonded warehouses, such as duty-free stores.  According to Plaintiff, Customs' prohibition on the sale of "unidentifiable fungibles," such as gasoline and diesel fuel, creates an additional exception to the general authorization set forth in § 1557(a)(1) that enjoys no support in either the statute or its implementing regulations.  See Brief In Support Of Ammex's Rule 56.1 Motion For Judgment Upon The Agency Record ("Plaintiff's Brief") at 9-13.

The first question to consider in reviewing an agency's construction of a statute it administers is "whether Congress has directly spoken to the precise question at issue."  Chevron, U.S.A., Inc. v. United States, 467 U.S. 837, 842 (1984).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842-43; see also Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) ("To ascertain whether Congress had an intention on the precise question at issue, we employ the traditional tools of statutory construction.  The first and foremost tool to be used is the statute's text, giving it its plain meaning.") (internal quotes and citation omitted).

In this case, 19 U.S.C.§ 1557(a)(1) (1994), as well as the other provisions covering duty-free stores and bonded warehouses, make clear the scope of merchandise that may be entered and

withdrawn from duty-free enterprises.  In relevant part, § 1557(a)(1) provides that

> <u>Any merchandise subject to duty, with the exception of perishable articles and</u>
> <u>explosive substances</u> other than firecrackers, <u>may be entered for warehousing and be</u>
> <u>deposited in a bonded warehouse</u> at the expense and risk of the owner [,] purchaser,
> importer, or consignee. Such merchandise may be withdrawn, at any time within 5
> years from the date of importation, for consumption upon payment of the duties and
> charges accruing thereon at the rate of duty imposed by law upon such merchandise at
> the date of withdrawal; or <u>may be withdrawn for exportation or for transportation and</u>
> <u>exportation to a foreign country</u> . . . .  (emphasis added).

On its face, the plain language of § 1557(a)(1) shows Congress' intent that there be only two

restrictions on the type of dutiable merchandise that may be stored or withdrawn from a bonded

warehouse:  (1) perishable articles and (2) explosive substances other than firecrackers.  Customs did

not find that diesel fuel and gasoline fall within either of these exceptions.[5]  Accordingly, since duty-free

stores are a type of bonded warehouse,[6] the plain language of § 1557(a)(1) makes both items eligible

---

[5]   Nor does it appear that Customs could have made such a finding.  <u>See</u> 18 U.S.C. §§ 841(c)
("'Explosive materials' means explosives, blasting agents, and detonators."), 841(d)  ("'[E]xplosives'
means any chemical compound mixture, or device, the primary or common purpose of which is to
function by explosion; [including] dynamite and other high explosives, black powder, pellet powder,
initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters.") and
841(e) (1994) ("'Blasting agent' means any material or mixture, consisting of fuel or oxidizer, intended
for blasting . . . ."); "List of Explosive Materials," ATF Pub. P 5400.8 (listing explosives, blasting agents
and detonators subject to regulation under 18 U.S.C. Chapter 40); <u>see also</u> 18 U.S.C. § 844(j) (1994)
(defining "explosive" for various criminal provisions).  Customs, in its regulations, distinguishes between
"explosive substances" and other "[d]angerous and highly flammable merchandise."  <u>See</u> 19 C.F.R. §
144.1 (2000) ("Dangerous and highly flammable merchandise, though not classified as explosive, shall
not be entered for warehouse without the written consent of the insurance company insuring the
warehouse . . . . ").

[6]   The relevant statutory provisions make clear that duty-free stores are a type, or subsection,
of bonded warehouses.  Not only is the specific provision for duty-free sales enterprises (19 U.S.C. §
1555(b) (1994)) a subsection of the general statute (§ 1555) for bonded warehouses, but 19 U.S.C. §
1555(b)(7) (1994) provides that "[t]he Secretary shall by regulation establish a separate class of

for sale from duty-free stores.[7]


In its brief, the government asserts that § 1557(a)(1) is not dispositive of Plaintiff's claim,

arguing the more specific provisions for duty-free stores set out in 19 U.S.C. § 1555(b)(3)(D) and (E)

provide <u>additional limitations</u> on the type of merchandise that may be sold duty-free.  <u>See</u> Defendant's

Response To Plaintiff's Motion For Judgment Upon The Agency Record ("Defendant's Response") at

13-15; <u>see also</u> HQ 225287 at 4 ("Clearly, inclusion of this caveat [§1555(b)(3)] indicates an intent

that the merchandise which could be sold in a duty-free store would be 'individual items of merchandise'

which could be market or otherwise identified.").  In relevant part, 19 U.S.C. §1555(b)(3) (1994)

provides that "[e]ach duty-free sales enterprise":

> (D) shall not be required to mark or otherwise place a distinguishing identifier on
> individual items of merchandise to indicate that the items were sold by a duty-free sales
> enterprise, unless the Secretary finds a pattern in which such items are being brought
> back into the customs territory without declaration;
>
> (E) may unpack merchandise into saleable units after it has been entered from
> warehouse and placed in a duty-free sales enterprise, without requirement of further
> permits.

---

bonded warehouses for duty-free sales enterprises."  <u>See also</u> 19 C.F.R. § 19.35(a) (1997)
(designating duty-free stores as "Class 9 warehouses" and providing that "[e]xcept insofar as the
provisions of this section and §§19.36-19.39 are more specific, the procedures for bonded warehouses
apply to duty-free stores (Class 9 warehouses).");  S. Rep. 100-71, at 230 (1988) ("Duty-free sales
enterprises are a special category of 'bonded warehouses' and it is under the bonded warehouse
provisions of section 555 (and related sections) of the Tariff Act that they have been regulated.").

[7]  In response to the court's Order of July 27, 2000, that the parties be prepared to discuss the
history of this statute, at oral argument both counsel presented sophisticated and useful analyses.  As
the court noted at the time, Plaintiff's counsel did a particularly extensive and thorough job in tracing the
origin of this statute, and is commended for that effort.

According to Defendant, by providing that duty-free stores will not be required to mark "individual items of merchandise" unless a pattern of reimportation exists, and that merchandise may be unpacked into saleable units, "Congress was plainly indicating the existence of four factors with respect to the type of merchandise that may be sold in a duty-free store: (1) the goods sold in duty-free stores constitute 'individual items of merchandise,' (2) the goods actually sold in duty-free stores consist of pre-designated 'saleable units,' (3) the goods sold in duty-free stores must be capable of being marked, and (4) if a pattern of reimportation exists with respect to particular goods, the Secretary must have some means of detecting such a pattern."  Defendant's Response at 15-16.  Because gasoline and diesel fuel possess none of these features, Defendant asserts, Customs correctly prohibited their sale from duty-free stores.  See id. at 15-16.

Essentially, the government reads § 1555(b)(3)(D) as authorizing Customs to require duty-free enterprises to sell only individual items of merchandise that are capable of being individually marked. On its face, § 1555(b)(3)(D) supports no such interpretation.  Section 1555(b)(3)(D) simply gives Customs the power to identify merchandise that is being reimported without declaration; nothing in the language or history of this provision authorizes Customs to prohibit the sale of certain merchandise outright, or encumber the sale of merchandise before a pattern of illegal reimportation is discovered.   In fact, Defendant's interpretation is directly contrary to Congress' intent, as evidenced in the relevant conference report, that Customs impose the least restrictions possible on the sale of duty-free merchandise.[8]

---

[8]  See House Conf. Rep. No. 100-576, at 769-70 (1988), reprinted in 1988 U.S.C.C.A.N. at 1802-03 ("This amendment creates a limited exception to the general prohibition on any requirement that duty-free stores mark their merchandise to indicate that it was sold in a duty-free store.  It authorizes the Secretary, in particular circumstances, to require a duty-free store to apply an

Defendant's characterization of 19 U.S.C. § 1555(b)(3)(E) (1994) is similarly strained. This provision provides simply that a duty-free enterprise "may unpack merchandise into saleable units." Defendant's interpretation, however, essentially substitutes the phrase "shall sell" for the language "may unpack," and imposes the limiting adjective "pre-designated" before "saleable units." See Defendant's Response at 15 (arguing that "Congress was plainly indicating . . . [that] . . . the goods actually sold in duty-free stores consist of pre-designated 'saleable units.'") (emphasis added). In doing so, Defendant significantly distorts the meaning of this statute, converting a general congressional authorization concerning the unpacking of merchandise into a specific congressional delineation of what merchandise may be sold duty-free. No reasonable interpretation of § 1555(b)(3)(E) supports such a fundamental change.

Accordingly, because there is no conflict between 19 U.S.C. § 1557(a)(1) (1994) and the specific provisions under 19 U.S.C. § 1555(b) (1994) for duty-free enterprises,[9] § 1557(a)(1) is dispositive of Plaintiff's claim. In view of § 1557(a)(1)'s instruction that "[a]ny merchandise subject to duty" may be entered and withdrawn from a bonded warehouse, the court finds that Customs violated this provision in promulgating HQ 227385. Section 1557(a)(1) provides that all types of dutiable

_____

inconspicuous mark or distinguishing identifier on certain of its merchandise. Before imposing such a requirement, the Secretary must find that a pattern or practice exists involving the reimportation of duty-free merchandise without declaration, occurring over a significant period of time. It is not intended that episodic or occasional instances would constitute a pattern or practice.").

[9] Nor is there any conflict between § 1557(a)(1) and any regulation promulgated by Customs. 19 C.F.R. § 19.36(e) (1997), governing "[m]erchandise eligible for warehousing," states simply that "[o]nly conditionally duty-free merchandise may be placed in a bonded storage area of a Class 9 warehouse." "Conditionally duty free merchandise," in turn, is defined as "merchandise sold by a duty-free store on which duties and/or internal revenue taxes (where applicable) have not been paid." 19 C.F.R. § 19.35(a) (1997).

merchandise may be sold from bonded warehouses, including duty-free stores, and it was error for the government to read into 19 U.S.C. § 1555(b)(3)(D) and (E) an exception beyond those specifically stated in § 1557(a)(1).  See A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 ("To extend an exemption to other than those plainly and unmistakably within [a statute's] terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people.").[10]  Had Congress intended Customs to restrict the sale of gasoline, diesel fuel, or other such fungible merchandise through duty-free stores, as the government claims, it could have included language to this effect in the statute. That Congress failed to identify such an intention in either the language or legislative history of § 1555(b), however, persuades this court that the statute contains no such restriction.[11]  See Ciba-Geigy Corp. v. United States, 2000 WL 1141256 at *6 (Fed. Cir. 2000) ("When confronted with unambiguous statutory language, we will not discount the statute's plain language by assuming ignorance on the part of Congress. . . . If . . . the [statute] no longer reflects the intent of Congress, it is Congress's task to change the words of the statute."); Ishida v. United States, 59 F.3d 1224, 1231 (Fed. Cir. 1995) (noting that, had Congress intended to limit the coverage of the Civil Liberties Act of 1988 in the manner asserted by the government, Congress could have expressed its intent in the statutory language).[12]

---

[10]  See also Sutherland Statutes And Statutory Construction (6th ed. 2000), § 47:11 ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions.")

[11]  This is particularly true since, in promulgating specific provisions to govern duty-free enterprises, Congress sought to establish a comprehensive statutory framework that would provide for greater uniformity and consistency in the regulation of duty free sales enterprises.  See Duty Free Int'l, 16 CIT at 164-65 (quoting and discussing § 1908(a) of The Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, and S.Rep. No. 100-71 (1987) at 229-30).

[12]  In addition to arguing that HQ 227385 violates 19 U.S.C. § 1557(a)(1) (1994), Plaintiff argues, inter alia, that Customs' determination was unreasonable because it ignored Customs' modern ability to monitor duty-free fuel sales through dyes and license plate monitoring.  See Plaintiff's Brief at

# V

## CONCLUSION

For the foregoing reasons, the court finds that Customs acted unlawfully in prohibiting Ammex

from selling duty-free gasoline and diesel fuel, and therefore grants the Motion Of Plaintiff Ammex, Inc.

For Judgment Upon The Agency Record.  Judgment to this effect shall be entered accordingly.

_____

Evan J. Wallach, Judge

Date:  August 25, 2000
       New York, New York

---

17-19.  Plaintiff also claims that Customs' ban on "unidentifiable fungibles" is at odds with its own
regulation governing the accounting for fungible merchandise.  See id. at 11-12 (discussing 19 C.F.R. §
19.12(f)(2), which provides that "FIFO inventory procedures may be used only for fungible
merchandise.  For purposes of this section, 'fungible merchandise' means merchandise which is identical
and interchangeable for all commercial purposes.").

While these arguments have substantial merit, further discussion is unnecessary, given the
court's holding that Customs' ruling violated § 1557(a)(1).