Slip Op. 02-20

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AMMEX, INC., | : | |
| Plaintiff, | : | |
| | : | **Before: WALLACH, Judge** |
| v. | : | **Court No.: 99-01-00013** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

[Order to Show Cause; Denied.]

Decided: February 22, 2002

Steptoe & Johnson LLP (Herbert C. Shelley, Alice A. Kipel), for Plaintiff.

Robert D. McCallum, Jr., Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin), for Defendant.

**WALLACH, Judge.**

## OPINION

### I

### PRELIMINARY STATEMENT

Plaintiff, Ammex, Inc. ("Ammex"), moves this court for an Order to Show Cause Why Defendant Should Not be Held in Contempt, pursuant to Rules 7(e) and 63 of the Rules of this

1

Court.  Specifically, Ammex seeks to require defendant, the United States of America (the "Government"), to explain why Customs' revocation of Ammex's authorization to sell duty-free fuel is not in contempt of this court's order and judgment of August 25, 2000.  Ammex, Inc.'s Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt ("Ammex's Motion") at 1.  Familiarity with the court's August 25, 2000 order and decision in Ammex, Inc. v. United States, 116 F. Supp. 2d 1269 (CIT 2000) ("Ammex I"), is presumed.

## II

## BACKGROUND

Ammex operates a duty-free store at the Ambassador Bridge between Detroit, Michigan and Windsor, Canada.  In a letter dated January 24, 1994, Ammex requested approval to sell gasoline and diesel fuel on a duty-free basis.  Letter from Barbeau to Morandini of 1/24/94 (Ex. 6 to Ammex's Memorandum of Law in Support of Ammex, Inc.'s Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt ("Ammex's Memo")).  On February 12, 1998, the United States Customs Service ("Customs") ruled that gasoline and diesel fuel could not be sold on a duty-free basis from Ammex's facility.  U.S. Customs Service Headquarters Ruling ("HQ") 227385, February 12, 1998.  This ruling reaffirmed a 1994 headquarters ruling which found that activities of duty-free stores should not be extended to cover "unidentifiable fungibles," such as gasoline and diesel fuel, when sold on a retail basis.  HQ 225287, June 7, 1994.  "[I]n both HQ 227385 and 225287, Customs accepted the requestor's assertion that the merchandise under consideration was duty-free but, . . . determined  that such merchandise could

not be sold as duty-free merchandise from a class 9 bonded warehouse." Customs Bulletin and Decisions, Vol. 35, No. 25, June 20, 2001, at 296.

In Ammex I, Ammex challenged the above Customs rulings. This court found that "Customs acted unlawfully in prohibiting Ammex from selling duty-free gasoline and diesel fuel." Ammex I, 116 F. Supp. 2d at 1275-76. This court accordingly entered a judgment setting aside HQ 227385 and "ORDERED ADJUDGED AND DECREED that 19 U.S.C. §§ 1555 and 1557 allow the duty-free sale of gasoline and diesel fuel from a duty-free enterprise." Id. at 1276.

On September 5, 2000, in accordance with the court's decision, Customs issued a letter to Ammex granting its request to expand its "Class 9 duty free warehouse operation to include the gasoline and diesel fuel tanks located at [Ammex's] facility." Letter from Ryan to Levesque of 9/5/00 (Ex. 2 to Ammex's Memo) ("September 5 letter").

On October 23, 2002, Ammex wrote to Customs seeking a letter to certify that the fuel sold at Ammex's duty-free store was exempt from taxes. Letter from Levesque to Ryan of 10/23/00 (Ex. 1 to "Durant Declaration" of Defendant's Opposition to Plaintiff's Motion to Show Cause Why Defendant Should Not be Held in Contempt) ("October 23 letter"). Customs forwarded Ammex's request to the Internal Revenue Service ("IRS"). On January 8, 2001, the IRS issued an informational letter stating that section 4081 of the Internal Revenue Code (the "Tax Code") (26 U.S.C. § 4081) imposes a tax on the entry into the United States of any taxable fuel, including gasoline and diesel fuel for consumption, use, or warehousing. Durant Declaration ¶8.

Based on the IRS letter, Customs determined that it could not lawfully permit Ammex to sell gasoline and diesel fuel duty-free. On June 20, 2001, Customs issued a notice proposing to

3

revoke the September 5 letter. Customs Bulletin and Decisions, Vol. 35, No. 25, June 20, 2001. On November 21, 2001, after a notice and comment period, Customs advised that it was "revoking a ruling letter pertaining to gasoline and diesel fuel from a [sic] class 9 bonded warehouses and revoking any treatment previously accorded by the Customs Service to substantially identical transactions." Id., Vol. 35, No. 47 (November 21, 2001) at 5 ("Revocation Decision"). Customs announced that the revocation would become effective on January 21, 2002. Id. Ammex thereafter filed its Motion to Show Cause Why Defendant Should Not be Held in Contempt.

### III

### STANDARD

To establish that a party is liable for civil contempt a plaintiff must prove three elements: "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995). Civil contempt must be proven by clear and convincing evidence, Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1572 (Fed. Cir. 1997), and a court cannot hold a party in contempt if there is a "fair ground of doubt as to the wrongfulness of the [party's] actions," Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., 803 F.2d 1170, 1173 (Fed. Cir. 1986).

## IV

## ARGUMENTS

Ammex argues that Customs' revocation is "plainly inconsistent with this Court's Order permitting the sale of duty-free gasoline and diesel fuel from a duty-free sales enterprise." Ammex's Memo at 3. Ammex requests, among other things, that this court issue an order to show cause why Customs' revocation is not in contempt of this court's judgment of August 25, 2000 and determine that section 4081 of the Tax Code, as it applies to entries into Class 9 bonded warehouses, is unconstitutional.

"The agency decision challenged in Ammex I was based exclusively on a perceived 'unidentifiable fungibles' exception to the statute relating to bonded warehouses, particularly Class 9 bonded warehouses, and the holding in Ammex I was simply that that decision, as memorialized in HQ 225287 and affirmed in HQ 227385, was contrary to law." Defendant's Opposition to Plaintiff's Motion for an Order to Show Cause Why Defendant Should not be Held in Contempt ("Defendant's Opposition") at 8. The Government argues, "Neither the challenged ruling letters nor this Court's holding addressed or involved any other potential basis for prohibiting the duty-free sale of gasoline and diesel fuel, including whether the fuel which Ammex intended to sell is encompassed by the statutory definition of 'duty-free merchandise.'" Id. Because the issues presently raised by Ammex's motion "are not relevant to a determination of whether Customs' revocation decision violates the Ammex I decision," id. at 17, the Government argues that this court should decline to consider them.

# V

## ANALYSIS

### A

### Jurisdiction to Entertain Present Challenge

The United States Court of International Trade, like all Federal courts established under Article III of the Constitution, is a court of limited jurisdiction. United States v. Gold Mountain Coffee, Ltd., 8 C.I.T. 247, 248, 597 F. Supp. 510, 513 (1984). The party asserting jurisdiction "has the burden of proving that jurisdiction in this court is proper." Id. at 249. Jurisdiction for this court to entertain the challenge in Ammex I fell under 28 U.S.C. § 1581(i), which provides the court with jurisdiction over "any civil action commenced against the United States . . . that arises out of any law of the United States providing for revenue from imports or tonnage, tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue or administration and enforcement with respect to these matters." 28 U.S.C. § 1581(i). Ammex now argues that this court "possesses jurisdiction to hear this motion by virtue of the Court's jurisdiction over the underlying proceeding in this case." Plaintiff's Memo at 3 (citing United States v. Hanover Ins. Co., 82 F.3d 1052, 1054 (Fed. Cir. 1996) ("[T]he Court of International Trade has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments.")).

Were Customs' revocation an attempt to attack or evade Ammex I and the court's August 25, 2000 judgment, then no doubt this court could readily exercise jurisdiction over such behavior under its inherent enforcement powers and as an extension of its jurisdiction to hear Ammex's original complaint in Ammex I. However, the issue underlying Ammex's Complaint

6

in the present motion is distinct from the issue raised in Ammex I. While both issues call upon the court to determine the validity of Customs' refusal to allow Ammex to sell fuel from its duty-free store, the stated bases for Customs' refusal to allow Ammex's sales differ in each case.

Ammex's contention that "there can be no dispute that the transaction and matter at issue in this second action are the same as the first–the matter now, as before, is Ammex's right to sell gasoline and diesel fuel duty-free from its duty-free store in Detroit, Michigan," Plaintiff's Memo at 16, is specious. Ammex states the issue too broadly. The issue in Ammex I was not simply whether Ammex is entitled "to sell gasoline and diesel fuel from its duty-free store in Detroit, Michigan." Id. Rather, the court was called upon to consider whether *the explanation* Customs provided for denying Ammex's request to sell gasoline and diesel fuel duty-free was arbitrary, capricious, or contrary to law.

The Government more accurately states the case thus:

> The only issue that the Court had to decide in [Ammex I] was whether the denial of Ammex's proposal to sell gasoline and diesel fuel free of duty at its duty-free store in Detroit, Michigan, *for the reasons provided in HQ 225287 and then affirmed in HQ 227385*, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Based on the nature of the complaint, the Court was constrained to consider only that stated basis for the challenged decision and review only the agency's record underlying its decision."

Defendant's Opposition at 4 (emphasis added).

This court accordingly reviewed Customs' stated reason for denying Ammex's request to sell duty-free fuel, namely, its rationale that such fuel falls under an "unidentifiable fungibles" exception to merchandise that can lawfully be entered and withdrawn for exportation from duty-free stores. Customs reasoned that, because duty-free merchandise purchased in the United States, if reimported, had to be declared and the duties and taxes paid, the lack of any practical

means of enforcing this requirement with respect to unidentifiable fuel in gas tanks rendered the sale of duty-free fuel contrary to law.

In resolving the issue raised in Ammex I, the court stated, "§ 1557(a)(1) is dispositive of Plaintiff's claim." Ammex I, 116 F. Supp. 2d at 1275. "On its face, the plain language of § 1557(a)(1) shows Congress' intent that there be only two restrictions on the type of dutiable merchandise that may be stored or withdrawn from a bonded warehouse: (1) perishable articles and (2) explosive substances other than firecrackers." Id. at 1273. This court determined that diesel fuel and gasoline did not fall within either of these exceptions, and thus it was error for the government to read into the governing statute "an exception beyond those specifically stated in § 1557(a)(1)." Id. at 1275. "In view of 1557(a)(1)'s instruction that 'any merchandise subject to duty' may be entered and withdrawn from a bonded warehouse, the court finds that Customs violated this provision in promulgating HQ 227385." Id.

Implicit in both parties' briefings in Ammex I and the court's opinion was the presumption that the gasoline and diesel fuel at issue qualified as "duty-free merchandise" within the meaning of 19 U.S.C. § 1555(b)(8)(E). Neither party questioned this assumption, and because neither party raised a challenge, the court did not consider or rule on such an issue. Because of subsequent events, however, the issue has arisen as to whether gasoline and diesel fuel can qualify as "duty-free merchandise" under 19 U.S.C. § 1555(b)(8)(E), in light of information from the IRS that such fuel may be subject to tax and therefore unable to qualify as "duty-free merchandise" under the statutory definition.

"[F]or the Court to consider Ammex's Motion, it must also consider whether the federal excise tax issue now framed by Customs was directly or indirectly part and parcel of Ammex I."

8

Reply of Ammex, Inc. In Support of its Motion for Order to Show Cause ("Ammex's Reply") at 12. Revelations by Ammex at oral argument confirm that the issue now raised was neither part and parcel, nor conclusively determined in Ammex I. Ammex previously maintained that this court's decision in Ammex I foreclosed all issues relevant to Customs' denial of Ammex's right to sell gasoline and diesel fuel duty-free, yet Ammex's October 23, 2000 letter to Customs states the following:

> Subsequent to the decision by the U.S. Court of International Trade, Ammex has commenced the sale of tax and duty free gasoline and diesel fuel, following U.S. Customs requirements and procedures. In conjunction with this operation, Ammex requires a letter from U.S. Customs stating that there are no taxes due at the time of bonded entry into the U.S. of gasoline and diesel fuel.

October 23 letter. Ammex explained at oral argument that the October 23 letter was an attempt by Ammex to obtain, and use in unrelated litigation, a certification from Customs that excise taxes were not applicable to certain fuel sold by Ammex. However, in addition, because it shows that Ammex itself would not rely on Ammex I on the excise tax question, the letter now serves to foreclose Ammex's res judicata and contempt arguments.

Having determined that the issue of federal taxes as applied to gasoline and diesel fuel and the concurrent consideration of whether such application preempts such fuel from qualifying as "duty-free merchandise" was neither part nor parcel of Ammex I, Ammex's Motion cannot be considered by the court under the present procedural posture. Ammex's Motion asks the court "to interpret § 1555(b)(8)(E) of Title 19–a Customs statute." Ammex's Reply at 12-13. This constitutes a new matter, one which was not contemplated in Ammex I. It therefore cannot be said that the revocation constitutes an attack on the court's prior judgment or order in this case. While the court does possess inherent power to determine the effect of its judgments and protect

9

against attempts to attack or evade those judgments, in this case, the issue before the court is not encompassed by the prior order.

Customs did not violate this court's order in Ammex I by either determining, based on newly acquired information, that the fuel Ammex desires to sell can not qualify as "duty-free merchandise," and its subsequent revocation of Ammex's entitlement to sell gasoline and diesel fuel from its duty-free store, does not violate the decision in Ammex I. Ammex is entitled to challenge the basis for Customs' decision to revoke its September 5 letter. If, however, Ammex wishes to challenge this new, distinct basis for Customs' disallowance of Ammex's sale of gasoline and diesel fuel from its duty-free store, Ammex must raise this issue anew in the proper procedural manner. It cannot, as the Government contends, "thwart proper procedure and bootstrap a new grievance onto a dispute that has already been resolved." Defendant's Opposition at 20.

**B**

**Res Judicata Argument**

Ammex also argues that Customs' "attempt to relitigate the matter of Ammex's duty-free fuel sales with a previously-available argument is precluded under the long-standing doctrine of res judicata," a term "used broadly to refer to concepts of merger, bar, and direct and collateral estoppel [i.e., issue preclusion]." Plaintiff's Memo at 15. Two "major limitations" to such preclusion, however, are (1) "a requirement that at the time of the first litigation the parties be able to foresee the later litigation that came to present the same issue" and "a requirement that the issue have played an important role in the abstract hierarchy of legal rules controlling the first or

10

the second litigation." 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4424 at 226-227 (1981); see also Hyman v. Regenstein, 258 F.2d 502, 510-11, cert. denied, 79 S.Ct. 589, 359 U.S. 913, 3 L.Ed.2d 575 (5th Cir. 1958) ("[C]ollateral estoppel by judgment is applicable only when it is evident from the pleadings and record that determination of the fact in question was necessary to the final judgment and it was foreseeable that the fact would be of importance in possible future litigation."). The court finds that the narrow tax issue now raised was too far outside the ambit of the Ammex I proceedings either to be foreseeable or to play a crucial role in the final judgment of that case. Issue preclusion should thus not operate to bar either party from raising this issue in the correct procedural posture.

## VI

## CONCLUSION

For the foregoing reasons, Ammex's Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt is denied.

_____
Evan J. Wallach, Judge

Dated: February 22, 2002
        New York, New York

11