**AMMEX, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 02–1498. *

United States Court of Appeals,
Federal Circuit.

July 1, 2003.

Craig L. John, Dykema Gossett PLLC, of Bloomfield Hills, MI, argued for plaintiff-appellant. On the brief were Herbert C. Shelley, J. William Koegel, Jr., Alice A. Kipel, and Troy H. Cribb.

Amy M. Rubin, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC; and John J. Mahon, Acting Attorney in Charge, International Trade Field Office. Of counsel was Beth C. Brotman, Attorney, Office of Assistant Chief Counsel, United States Customs Service, New York, NY.

Before MAYER, Chief Judge, NEWMAN, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Ammex, Inc. ("Ammex") appeals the final decision of the United States Court of International Trade denying its Motion for an Order to Show Cause Why the United States Customs Service Should Not be Held in Contempt. *Ammex, Inc. v. United States*, 193 F.Supp.2d 1325 (Ct. Int'l Trade 2002) (*"Ammex II"*). Because *res judicata* does not preclude the United States Customs Service ("Customs") from revoking its approval of the sale of gaso-

line and diesel fuel on a duty and tax-free basis, we affirm.

## I. BACKGROUND

Ammex operates a "sterile" U.S. Customs Class 9 bonded warehouse, commonly known as a duty-free store or duty-free sales enterprise, from which it seeks to sell gasoline and diesel fuel on a duty and tax-free basis. The designation "sterile" indicates that the physical design and operation of the facility guarantees the exportation of products sold therein. The store is located on West Lafayette Street in Detroit, Michigan, adjacent to the Ambassador Bridge connecting the United States and Canada. Customers entering Ammex's facility have necessarily proceeded beyond the "point of no return," having exited from the United States. As a duty and tax-free sales enterprise, Ammex is permitted to sell for export certain goods "duty-free" to customers who transport those goods directly to Canada after leaving Ammex's store.

In a letter dated January 24, 1994, Ammex requested approval to sell gasoline and diesel fuel on a duty and tax-free basis. On February 12, 1998, Customs denied Ammex's request because gasoline and diesel fuel are "unidentifiable fungibles." U.S. Customs Service Headquarters Ruling ("HQ") 227385 (Feb. 12, 1998). HQ 227385 reaffirmed a 1994 HQ ruling which found that activities of duty-free stores should not be extended to cover "unidentifiable fungibles," such as gasoline and diesel fuel, when sold on a retail basis. HQ 225287, 1994 WL 830665 (June 7, 1994). "[I]n both HQ 227385 and 225287, Customs accepted the requestor's assertion that the merchandise under consideration was duty-free but ... determined that such merchandise could not be sold as duty-free merchandise from a class 9 bonded warehouse." *Customs Bulletin*

*and Decisions,* Vol. 35, No. 25, 295, 296 (June 1, 2001).

In *Ammex, Inc. v. United States,* 116 F.Supp.2d 1269 (Ct. Int'l Trade 2000) ("*Ammex I*"), Ammex challenged the above HQ rulings. The Court of International Trade found that "Customs acted unlawfully in prohibiting Ammex from selling duty-free gasoline and diesel fuel." *Id.* at 1275–76. The Court of International Trade held that Customs's decision to prohibit Ammex from selling duty-free gasoline and diesel fuel violated 19 U.S.C. § 1557(a)(1), which allows "[a]ny merchandise subject to duty, with the exception of perishable articles and explosive substances" to be entered and withdrawn for exportation from bonded warehouses such as Ammex's duty-free store. *Id.* The Court of International Trade accordingly entered a judgment setting aside HQ 227385 and "ORDERED ADJUDGED AND DECREED that 19 U.S.C. §§ 1555 and 1557 allow the duty-free sale of gasoline and diesel fuel from a duty-free enterprise." *Id.* at 1276.

On September 5, 2000, in accordance with the Court of International Trade's decision, Customs issued a letter ("September 5 letter") to Ammex granting its request to expand its "Class 9 duty[-]free warehouse operation to include the gasoline and diesel fuel tanks located at [Ammex's] facility."

On October 23, 2000, Ammex wrote to Customs seeking a letter to certify that the fuel sold at Ammex's duty-free store was exempt from taxes. Customs forwarded Ammex's request to the Internal Revenue Service ("IRS"). On January 8, 2001, the IRS issued an informational letter stating that 26 U.S.C. § 4081 of the Internal Revenue Code imposes a tax on the entry into the United States of any taxable fuel, including gasoline and diesel fuel for consumption, use, or warehousing.

Based on the IRS letter, Customs determined that it could not lawfully permit Ammex to sell gasoline and diesel fuel on a duty and tax-free basis. On June 1, 2001, Customs issued a notice proposing to revoke the September 5 letter. *Customs Bulletin and Decisions*, Vol. 35, No. 25, at 295 ("Proposed Revocation of Letter Relating to Gasoline and Diesel Fuel From a Class 9 Customs Bonded Warehouse Also Known as a Duty-free Shop"). On November 21, 2001, after a notice and comment period, Customs revoked its approval of the sale of gasoline and diesel fuel on a duty and tax-free basis, effective on January 21, 2002. *Customs Bulletin and Decisions*, Vol. 35, No. 47, 5 (Nov. 7, 2001) ("Revocation of Ruling Letter and Treatment Relating to Gasoline and Diesel Fuel in a Class 9 Customs Bonded Warehouse").

Subsequently, Ammex filed suit in the Court of International Trade to bar Customs's revocation under the doctrine of *res judicata* and to hold Customs in contempt for violating *Ammex I*. The Court of International Trade denied Ammex's motion to enjoin Customs from revoking Ammex's permission to sell gasoline and diesel fuel on a duty and tax-free basis and to hold Customs in contempt for violating the court's judgment in *Ammex I*. Ammex timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

### A. Standard of Review

▮ Whether, based on the facts of the case, a claim is barred by *res judicata* is a question of law that we review *de novo*. *Faust v. United States*, 101 F.3d 675, 677 (Fed.Cir.1996). We review the denial of a motion to hold Customs in contempt for an abuse of discretion. *United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1056 (Fed.Cir.1996).

### B. Res Judicata

This case presents the question of whether *res judicata* precludes Customs from revoking its approval of the sale of gasoline and diesel fuel on a duty and tax-free basis.

▮ Under the doctrine of *res judicata* (or claim preclusion), "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *see also Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir.1983) (stating that this court would adopt the transactional approach advocated by the Restatement (Second) of Judgments); Restatement (Second) of Judgments § 18 (1982). Over the years, the doctrine has come to incorporate common law concepts of merger and bar, and will thus also bar a second suit raising claims based on the same set of transactional facts. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ("Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar."). Accordingly, to prevail on a claim of *res judicata*, the party asserting the bar must prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed.Cir.2000).

It is undisputed that the first two elements are present: The parties (Ammex and the government) are identical in both actions, and the prior litigation resulted in a valid final judgment on the merits. Thus, the case reduces to an analysis of the transactional facts involved in the two causes of action. *See Young Eng'rs,* 721 F.2d at 1314 (noting that this court is broadly guided by the Restatement (Second) of Judgments); Restatement (Second) of Judgments § 24 (defining "claim" as encompassing rights and remedies arising out of the same set of transactional facts).

■■■ The Restatement notes that a common set of transactional facts is to be identified "pragmatically." Restatement (Second) of Judgments § 24. Seeking to bring additional clarity to this standard, courts have defined "transaction" in terms of a "core of operative facts," the "same operative facts," or the "same nucleus of operative facts," and "based on the same, or nearly the same factual allegations." *Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223, 226 (7th Cir.1993) (citing *Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 521, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)); *see also Nevada v. United States,* 463 U.S. 110, 128–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (requiring courts to first determine whether the "same cause of action" is being sued upon); *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) ("[A] prior judgment is *res judicata* only as to suits involving the same cause of action."); *United States v. Haytian Republic,* 154 U.S. 118, 125, 14 S.Ct. 992, 38 L.Ed. 930 (1894) ("One of the tests laid down for the purpose of determining whether or not the causes of action should have been joined in one suit is whether the evidence necessary to prove one cause of action would establish the other."). In the instant case, we must determine whether, for purposes of claim preclusion, HQ 227385, which Customs provided for denying Ammex's request to sell gasoline and diesel fuel duty-free and the Court of International Trade held was contrary to law, *Ammex I,* 116 F.Supp.2d at 1270, is based on the same set of factual allegations as whether the application of federal taxes to gasoline and diesel fuel preempts such fuel from qualifying as "duty-free merchandise," *Ammex II,* 193 F.Supp.2d at 1330.

We hold that it is not. The government correctly argues that, although the ultimate effect of both claims was to determine whether Ammex may sell gasoline and diesel fuel duty-free, the claims are sufficiently different because in the prior lawsuit, Ammex claimed, upon the administrative record, that Customs's interpretation of 19 U.S.C. § 1557(a)(1) was not in accordance with law, and the current claim is whether the IRS's determination that Ammex's fuel must be taxed under 26 U.S.C. § 4081 precludes it from qualifying as "duty-free merchandise" under 19 U.S.C. § 1555(b)(8)(D).

The Omnibus Trade and Competitiveness Act of 1988 defines "duty-free enterprise" as:

> A person that sells, for use outside the customs territory, duty-free merchandise that is delivered from a bonded warehouse to an ... exit point for exportation by, or on behalf of, individuals departing from the customs territory.

19 U.S.C. § 1555(b)(8)(D) (2000). "Duty-free merchandise" is defined as goods on which no federal duty or tax has been charged "pending exportation from the customs territory." *Id.* § 1555(b)(8)(E). Logic dictates that the term "duty-free" is somewhat of a misnomer and more accurately should be termed "duty *and tax*-free." Thus, the unique nature of a duty

and tax-free store is that it sells goods for immediate export from the United States so that its customers need not pay federal duties and taxes on the goods.

Ammex concedes that *Ammex I* did not expressly adjudicate the tax issue. Ammex nevertheless argues that the tax question appeared in the administrative record in *Ammex I* and *could have been litigated* in *Ammex I*. We conclude that the Court of International Trade properly rejected Ammex's argument. Ammex points only to excerpts dealing with forwarding warehouse entry documents to the IRS, and not the question of whether federal tax was due on the gasoline and diesel fuel. Moreover, Ammex raised the specific tax issue with Customs after the conclusion of *Ammex I*. In response to a request from Ammex, the IRS issued an informational letter stating that 26 U.S.C. § 4081 imposes a tax on the entry into the United States of any taxable fuel, including gasoline and diesel fuel for consumption, use, or warehousing. Ammex argues that a court's statutory interpretation cannot be challenged in a subsequent agency decision. The factual premise of the lawsuit in *Ammex II*, however, differs from the prior one because the application of federal taxes to gasoline and diesel fuel, preempting such fuel from qualifying as "duty-free merchandise," is a new fact which was not a part of *Ammex I. Cf. United States v. Stone & Downer Co.*, 274 U.S. 225, 235–36, 47 S.Ct. 616, 71 L.Ed. 1013 (1927) (holding that in customs classification cases a determination of fact or law with respect to one importation is not *res judicata* as to another importation of the same merchandise by the same parties). Because under the relevant statute, the term "duty-free merchandise" means "merchandise sold by a duty-free sales enterprise on which neither Federal duty nor Federal tax has been assessed pending exportation from the customs territory," 19 U.S.C.

§ 1555(b)(8)(E), we reject Ammex's argument that the legal claims in the two suits arise from the same "operative nucleus of fact." *See, e.g., Herrmann,* 999 F.2d at 226; Restatement (Second) of Judgments § 24 cmt. f ("Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first."); *see also Lawlor,* 349 U.S. at 327–28, 75 S.Ct. 865 (stating prior dismissal of antitrust complaint did not bar new antitrust complaint based on conduct occurring after the first judgment).

■ Next, Ammex correctly argues that the Court of International Trade erred in its initial decision by applying the elements of collateral estoppel (or issue preclusion) instead of those of *res judicata.* In denying Ammex's contempt motion, the Court of International Trade applied the elements of collateral estoppel and recognized the distinction between the issue raised in *Ammex I,* 116 F.Supp.2d at 1270 (stating that the specific decisions and rationale contained in HQ 227385 were arbitrary, capricious, or contrary to law), and the separate and distinct issue on which Ammex challenged Customs's revocation of the September 5 letter in *Ammex II,* 193 F.Supp.2d at 1330 (stating that the gasoline and diesel fuel sold at Ammex's duty-free store is subject to federal tax and that such fuel does not satisfy the statutory definition of "duty-free merchandise"). Nevertheless, the government correctly asserts that this was not prejudicial error, because the Court of International Trade addressed Ammex's argument in denying its motion for reconsideration, *Ammex, Inc. v. United States,* 201 F.Supp.2d 1374 (Ct. Int'l Trade 2002), and, as discussed above, under this court's *de novo* review,

*res judicata* does not preclude Customs from revoking its approval of the sale of gasoline and diesel fuel on a duty and tax-free basis.

### C. Motion for an Order to Show Cause Why the United States Customs Service Should Not be Held in Contempt

Finally, Ammex suggests that the Court of International Trade abused its discretion in denying its motion to hold Customs in contempt for revoking Ammex's duty and tax-free status for gasoline and diesel fuel. We reject this argument because the Court of International Trade may hold a party in contempt if it determines that its actions constitute a willful obstruction of justice, and we shall sustain a denial of contempt based upon a reasoned legal position for failure to abide by the court's judgment. Here, the Court of International Trade did not abuse its discretion in denying Ammex's motion to hold Customs in contempt because the position of the IRS on the tax issue provided a reasonable basis for Customs's action. In short, an agency may change its policy position based on a reasonable explanation, and the IRS ruling provided such a basis.

## IV. CONCLUSION

Because *res judicata* does not preclude Customs from revoking its approval of the sale of gasoline and diesel fuel on a duty and tax-free basis, the judgment of the Court of International Trade denying Ammex's Motion for an Order to Show Cause Why the United States Customs Service Should Not be Held in Contempt is

*AFFIRMED.*