Joseph O. SALADINO, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 03–2871T, 04–1367T.

United States Court of Federal Claims.

Nov. 2, 2004.

Joseph O. Saladino, Palmdale, CA, plaintiff pro se.

David D. Gustafson, Washington, DC, with whom was Assistant Attorney General Eileen J. O'Connor, for defendant. Robert N. Dorosin, on the briefs.

## OPINION

CHRISTINE O.C. MILLER, Judge.

Plaintiff assists persons in the preparation of their income tax returns. He has filed numerous *pro se* complaints in the Court of Federal Claims alleging claims on behalf of his purported clients, as well as claims in his own right. Before the court are two of these complaints, Nos. 03–2871T and 04–1367T, now consolidated, and defendant's corresponding motions to dismiss both complaints. The issue, more vexatious than novel, is whether the Federal Government lawfully may tax wages. Plaintiff's particular formulation of this challenge is that the taxpayers are entitled to a deduction of their wages from not-for-profit activities. Argument has been heard.

## PROCEDURAL FACTS and HISTORY

In the lead case, Joseph O. Saladino ("plaintiff") filed No. 03–2871T ("*Saladino III* ") on December 30, 2003, which was assigned to Judge Sypolt. By his amended complaint, amended as a matter of right pursuant to RCFC 15(a) and filed on March 22, 2004, in opposition to defendant's motion to dismiss,[1] plaintiff seeks the return of certain

nonparty taxpayers' income tax overpayment for the years 1992 through 2000. He assisted these taxpayers, Edwin L. and Alice M. Geiersbach of Missouri, in the preparation of the subject tax returns, and he seeks relief on their behalf. That he himself is not the taxpayer entitled to claim a refund does not, in plaintiff's view, impede his advancing such claims.[2] Instead, he relies on a power of attorney given to him by the Geiersbachs. Plaintiff also alleges that, as their "fiduciary" by virtue of their execution of a "Notice Concerning Fiduciary Relationship," IRS Form 56, attached to his amended complaint, he received "the right of the Agent to adjudicate this matter." Am. Compl. 11, ¶ III.b.[3] The underlying claim for refund denied by the Internal Revenue Service (the "IRS") is broadly alleged as the IRS's failure to allow an unidentified deduction for "ordinary and necessary expenses" incurred for the production of income. *See* 26 U.S.C. § 212(1) (2000).

Plaintiff also joins a claim for a violation of the Geiersbachs' or his due process rights—a distinction not clarified by the amended complaint—based on the IRS's alleged "insufficiency of process" caused by its denial of the refund. Am. Compl. 2, ¶ V. Plaintiff alleges that his tort claim can be joined with a claim for refund despite his admission that "[t]he Tort claim is not ripe for adjudication." *Id.* 10, ¶ I.e.

Plaintiff demands a stay of proceedings, although it is not clear what purpose the stay will serve. He alleges that he filed a request for the refund on February 4, 2003, and that the IRS did not respond within six months. *See* 26 U.S.C. § 6532(a)(1) (2000). A tort

---

1. Plaintiff's opposition papers include numerous documents captioned separately as follows: (1) "Response to Defendant['s] Motion To Dismiss[;]" (2) "Amended Complaint for Refund of Divisible Taxes with Motion for Automatic Stay[;]" (3) "Statement of Facts[;]" (4) IRS Form 56 ("Notice Concerning Fiduciary Relationship"); (5) "Pleading Special Matters & Exhibit 1[;]" and (6) "Pleading Special Matters & Exhibit 2[.]" The paragraph numbering recommences with each newly captioned document; with the exception of the IRS Form 56, the documents are paginated sequentially. This entire filing constitutes the "amended complaint" and is cited, as follows: Am. Compl. [page# ], ¶ [# ].

2. It is noted that the Geiersbachs filed a lawsuit in their own name, No. 04–968T, on June 7, 2004, which they subsequently voluntarily dismissed. *Geiersbach v. United States*, No. 04–968T (Fed.Cl. Aug. 19, 2004) (notice of dismissal entered).

3. Plaintiff additionally alleged that the Geiersbachs have "contracted with the Plaintiff to prosecute this claim as evidenced by [the IRS Form 56]." Am. Compl. 8, ¶ III.a.

allegedly occurred on November 27, 2003, "during the pendency of the attached refund proceeding." Am. Compl. 10, ¶ I.f. He alleges that he filed an "original request for the tort" on December 26, 2003. *Id.* 10, ¶ I.d. No further specifics can be drawn from this rendition of his complaint.

On March 1, 2004, defendant filed a motion to dismiss *Saladino III.* Plaintiff filed his amended complaint in lieu of opposition on March 22, 2004. Defendant filed its reply on April 5, 2004.

While the motion to dismiss was fully briefed and awaiting decision, plaintiff filed on August 20, 2004, another action, No. 04–1367T ("*Saladino IV*"), which was assigned to the undersigned. On August 26, 2004, defendant filed a notice of related cases and request for transfer in both *Saladino III* and *Saladino IV.* Plaintiff on September 7, 2004, filed a similar notice of related cases, and, although he did not respond to either defendant's notice or request for transfer, plaintiff requested consolidation—a request not opposed by defendant.[4] In addition to plaintiff's request for consolidation, plaintiff attached a motion for leave to file, yet again, another amended complaint. Plaintiff explained that, due to his own confusion stemming from his filing motions for voluntary dismissal in three other actions before the

Court of Federal Claims, he simply thought *Saladino III* had been dismissed. Pl.'s Mtn. for Leave filed Sept. 7, 2004, ¶¶ 4–5. Moreover, plaintiff stated that he "had no intention of prosecuting this instant case[.]" *Id.* ¶ 6. Plaintiff, in apparent contradiction, added that, "if the Court will grant Plaintiff leave to amend, Plaintiff wishes to keep this amended case active." *Id.* ¶ 7. Otherwise, plaintiff desired a dismissal without prejudice.[5]

The prior judge did not rule on plaintiff's motion for leave to file an amended complaint or his request for dismissal without prejudice. Instead, defendant's motion for transfer was granted, and *Saladino III* was transferred to the undersigned by order dated September 2, 2004. On October 6, 2004, this court ordered the two cases consolidated.

Plaintiff then filed together two separately-captioned documents[6] that, as this court interprets the captions and their substance, were intended as the following: (1) an opposition brief against defendant's motion for sanctions;[7] (2) a second opposition brief to defendant's motion to dismiss; (3) a reply brief for his motion for leave to amend; and (4) a document entitled "Statement of Facts" that appears to represent a third amended complaint. Pl.'s Br. filed Sept. 27, 2004. As if the filing of this agglomeration was not

---

4. This filing includes the following separately-paginated documents, which will be cited, as follows: (1) "Notice of Related Case" (cited as same); (2) "Motion for Leave To File Amended Complaint for Review of Administrative Determinations and Motion for Stay and Plaintiff's Objection to Defendant's Motion for Sanctions" (cited as "Mtn. for Leave"); (3) "Amended Complaint for Review of Administrative Determinations and Motion for Stay" (cited as "Second Am. Compl."); (4) "Amended Statement of Facts" (cited as "Am. Statement of Facts"); and (5) "Amended Brief in Support of Automatic Stay of Collection Proceedings and Responsive Pleading by United States" (not referred to herein).

5. Plaintiff also stated that he "has made changes to his pleadings as he became aware of other Court rulings to other cases with similar subject matter. Plaintiff does not wish to pursue arguments that have been ruled against by the Court in other cases and he wishes to amend his pleadings to reflect previous rulings of the Court with the attached pleadings." Pl.'s Mtn. for Leave filed Sept. 7, 2004, ¶ 8. Regrettably, that is not the case; plaintiff has not been deterred by other

rulings, and defendant has been required to address repeatedly the same arguments in other cases brought by plaintiff. See, e.g., *Saladino v. United States,* No. 03–2667T (Fed.Cl. Feb. 6, 2004) (dismissal for lack of standing, jurisdiction, and collateral estoppel) (unpubl.); *Saladino v. United States,* No. 03–2674T (Fed.Cl. Dec. 12, 2003) (dismissal for lack of standing and jurisdiction) (unpubl.).

6. These documents include: (1) "Plaintiff's Opposition to Defendant's Motion for Sanctions and Defendant's Motion To Dismiss and Opposition to Plaintiff's 'Motion for Stay' and Plaintiff's Motion for Review of the Record[;]" and (2) "Statement of Facts[.]" Unlike plaintiff's amended complaint, each document is paginated individually and is therefore treated as a separate filing, although, when referred to together, the set of documents will be cited as "Pl.'s Br. filed Sept. 27, 2004."

7. The motion for sanctions is neither fully briefed nor before the court at this time.

sufficient to confuse the record, plaintiff then filed an amended version of it.[8] *See* Pl.'s Br. filed Sept. 28, 2004. In the latest iteration of plaintiff's legal theories in *Saladino III,* which the court has treated as plaintiff's corrected version of his second amended complaint lodged for filing, plaintiff asserts as authority for this suit 26 U.S.C. §§ 6612(a) and 6672(c)(2) (2000), based on allegedly erroneous and excessive notices of deficiencies and other collection actions.

On September 29, 2004, defendant diligently filed yet another reply brief to plaintiff's third attempt to establish jurisdiction in *Saladino III.* This reply brief represents the finish line for the filings associated with defendant's motion to dismiss in *Saladino III,* which sought dismissal under RCFC 12(b)(1) and 12(b)(6), respectively, for lack of jurisdiction and failure to state a claim upon which relief can be granted. Because plaintiff is not entitled, as a matter of right, to file a second amended complaint, *see* RCFC 15(a), nor is he entitled to file more than one brief in opposition to defendant's motion, *see* RCFC 7.1(a), plaintiff's subsequent filings are not properly before the court. For the same reason, defendant's arguments will be addressed only insofar as they are responsive to plaintiff's amended complaint filed on March 22, 2004.

The facts and procedural posture of *Saladino IV* are similar, so the court will discuss the facts of this consolidated later-filed action after resolution of defendant's motion to dismiss in *Saladino III.*

## DISCUSSION

### I. *Standard of review*

A challenge to the court's subject matter jurisdiction requires examination of the court's "general power to adjudicate in specific areas of substantive law[.]" *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir. 1999). Like all inferior federal courts, the Court of Federal Claims operates under its statutory grant of authority, and its ability to redress an alleged wrong is derivative therefrom. *See Massie v. United States,* 226 F.3d

1318, 1321 (Fed.Cir.2000). An order in excess of jurisdiction is a void order, *see Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), and consequently— both to avoid wasting resources and to uphold the constitutional and statutory framework that defines this court's powers—"subject-matter delineations must be policed by the courts on their own initiative even at the highest level[,]" *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *see Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir. 1998) ("We therefore have a special obligation to satisfy ourselves of our own jurisdiction.").

RCFC 12(b)(1), invoked by defendant, expedites compliance with these precepts by enabling parties to raise by motion, as a defense to a claim, lack of subject matter jurisdiction. The party seeking to invoke this court's jurisdiction carries the burden of establishing it. *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998). When asserting lack of jurisdiction over a claim presented in a complaint, a defendant can invoke Rule 12(b)(1) by either disputing the truth of the jurisdictional facts alleged therein, *see, e.g., Ferreiro v. United States,* 350 F.3d 1318, 1324 (Fed.Cir.2003), or by challenging the sufficiency of the allegations on the face of the complaint, *see, e.g., Folden v. United States,* 379 F.3d 1344, 1354 (Fed. Cir.2004). Presented with the former argument, the court acts as finder of fact, and the plaintiff must establish the requisite jurisdictional facts by a preponderance of the evidence. *Toxgon Corp. v. BNFL, Inc.,* 312 F.3d 1379, 1383 (Fed.Cir.2002). For a facial challenge, however, the court accepts all well-pleaded facts as true, *Folden,* 379 F.3d at 1354, and makes "reasonable factual assumptions and draw[s] plausible inferences in favor of the [plaintiff]." *Ephraim v. Brown,* 82 F.3d 399, 401 (Fed.Cir.1996); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995).

RCFC 12(b)(6), also invoked by defendant, enables a party to raise by motion the de-

---

**8.** The amended version will be cited per note 6 *supra.* The "Statement of Facts" from the origi-

nal filing is captioned in the amended version as "Amended Affidavit and Statement of Facts."

fense of failure to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002). "[T]he plaintiff's well-pleaded factual allegations are accepted as true and all reasonable factual inferences are drawn in its favor." *Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.,* 382 F.3d 1324, 1327 (Fed.Cir. 2004). Therefore, the court must deny a motion under RCFC 12(b)(6) "if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Before turning to the parties' arguments, this court is mindful that, despite his transparently lawyer-like attempts to assert claims of his putative "clients," plaintiff is nevertheless a *pro se* litigant, entitling him to certain leniencies afforded to all parties proceeding *pro se.* This is particularly so on motions to dismiss, for "[i]t is settled law that the allegations of [a *pro se* ] complaint, however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotations omitted); *see also Vaizburd v. United States,* 384 F.3d 1278, 1285 n. 8 (Fed.Cir.2004) (noting that pleadings drafted by *pro se* parties "should accordingly not be held to the same standard as parties represented by counsel"). Courts have "strained our proper role in adversary proceedings to the limit, searching [the record] to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285, 1292 (1969). However, while "the fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, ... it does not excuse its failures, if such there be." *Henke,* 60 F.3d at 799. The leniency afforded *pro se* litigants with respect to mere for-

malities therefore does not relieve them of jurisdictional requirements. *Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987).

The custom of indulging a *pro se* complainant is strained in these cases. Plaintiff has abused the court's procedures by repeatedly changing his jurisdictional allegations in response to defendant's valid arguments against each prior complaint; he presents arguments repeatedly rejected by other judges; and he attempts to frustrate defendant by inartfully dodging legitimate arguments and failing to address any applicable case law.

## II. Defendant's motion to dismiss Saladino III

Defendant moved to dismiss plaintiff's complaint in its entirety on several grounds under both RCFC 12(b)(1) and 12(b)(6). Defendant's motion seeks dismissal of plaintiff's claims on two grounds. First, defendant asserts that the complaint fails to state a claim under Rule 12(b)(6) because res judicata bars those claims that plaintiff has pleaded twice before in other actions. Second, with respect to any new claims presented by plaintiff, defendant invokes Rule 12(b)(1) to foreclose jurisdiction over the claims and, alternatively, contends that issue preclusion operates as a bar on the merits to prohibit plaintiff from relitigating his lack of standing. The court will address each argument in turn.

### 1. Defendant's motion to dismiss plaintiff's prior pleaded claims under doctrine of res judicata

A portion of plaintiff's amended complaint seeks return of the Geiersbachs' overpaid income taxes for tax years 1992 through 2000. In urging that the doctrine of res judicata bars such a claim, defendant, demonstrating meticulous attention to the record, culled through the thirteen lawsuits filed by this plaintiff on his clients' behalf, as of the date that defendant filed its motion,[9] in order to present two prior actions that have been

---

**9.** As of the date of this opinion, plaintiff has filed in his or others' names over 100 cases in the

Court of Federal Claims.

decided and should foreclose plaintiff from proceeding further.

Defendant submits that *Saladino v. United States*, No. 03–1905T (Fed.Cl., filed Aug. 11, 2003) ("*Saladino I*"), is the first case in which plaintiff sought the alleged overpayments of income tax on behalf of the Geiersbachs for tax years 1992 through 2000. On September 30, 2003, Judge Allegra dismissed *Saladino I* for lack of prosecution. *Saladino v. United States*, No. 03–1905T (Fed.Cl. Sept. 30, 2003) (unpubl.). The Clerk of the Court thereafter entered a judgment of dismissal. Defendant also presents *Saladino v. United States*, No. 03–2210T (Fed.Cl., filed Sept. 22, 2003) ("*Saladino II*"). Plaintiff, according to defendant, again had sought relief on behalf of the Geiersbachs for tax years 1992 through 2000. Judge Lettow dismissed *Saladino II* on October 3, 2003, for lack of subject matter jurisdiction. *Saladino v. United States*, No. 03–2210T (Fed.Cl. Oct. 3, 2003) (unpubl.). Because the instant lawsuit is plaintiff's third attempt to litigate the same claim presented twice before, defendant asserts plaintiff's current action is barred by res judicata.

As a preliminary matter, this court construes defendant's argument under the heading "res judicata" to mean "claim preclusion," which the term "res judicata" has come to signify. This is to be distinguished from "issue preclusion," also known as "collateral estoppel." *See generally Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566 (Fed. Cir.1983). Defendant does, however, suggest in a footnote that its motion should be granted under collateral estoppel. *See* Def.'s Br. filed Mar. 5, 2004, at 7 n. 9. Whether this is sufficient to raise a separate argument based on collateral estoppel is questionable, but this court interprets defendant's motion as invoking both res judicata and collateral estoppel for two reasons. First, courts have recognized, as does the *Restatement (Second) of Judgments*, ch. 3, intro. note (1982),[10] that the term "res judicata" can be used to encompass both issue and claim preclusion. *See Baker v. Gen. Motors Corp.*, 522 U.S.

222, 233 n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (" 'Res judicata' is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion ... and (2) issue preclusion, long called 'collateral estoppel.' "); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365 n. 2 (Fed. Cir.2000). Second, defendant does contend—albeit in a summary fashion—that collateral estoppel supports its motion.

The doctrine of res judicata prescribes that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). For res judicata to apply, the "party asserting the bar must prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed.Cir.2003) ("*Ammex I*").

While res judicata bars issues that were, or could have been, raised in the first action, the doctrine of collateral estoppel only bars relitigation of issues that actually were litigated in the first action. *See United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1343 (Fed.Cir.1999). Collateral estoppel applies when

> (1) the issues decided in the [prior action] are identical to those [in the subsequent action]; (2) those issues were actually litigated in the prior [action]; (3) the [prior court's] resolution of those issues was necessary to its resulting judgment; and (4) [the party against whom collateral estoppel is asserted] was afforded a full and fair opportunity to litigate its position.

*Ammex, Inc. v. United States*, 384 F.3d 1368, 1371 (Fed.Cir.2004) ("*Ammex II*").

---

**10.** The Federal Circuit relies on the principles of res judicata set forth in the *Restatement (Second) of Judgments. Foster v. Hallco Mfg. Co.*, 947

F.2d 469, 477 n. 7 (Fed.Cir.1991) ("[W]e rely on the principles set out in the Restatement ... on issue and claim preclusion[.]").

No issue is present in this case that the parties differ in *Saladino I, Saladino II,* or the instant actions.

### 1) *Preclusive effects of Saladino I as to plaintiff's prior pleaded claims*

■ The hurdle confronted by defendant when invoking res judicata for *Saladino I* is the requirement that the prior court rendered a final judgment on the merits. In *Saladino I,* the Court of Federal Claims dismissed the action for failure to prosecute under RCFC 41(b). That rule provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision [for failure to prosecute] and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, ... operates as an adjudication upon the merits." This language, specifically the phrase "adjudication on the merits," appears to signal finality for purposes of claim preclusion. However, the Supreme Court has held that the identical language in Fed.R.Civ.P. 41(b) does not determine whether the dismissal is claim preclusive. *See Semtek Int'l, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 500–06, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (holding that federal common law, which in turn incorporates state law, governs issues of preclusive effects of federal diversity actions and that Rule 41(b) does not inform issue). In other words, an "adjudication upon the merits" under Rule 41(b) does not operate as a final decision on the merits for purposes of res judicata. *Id.* at 503–04, 121 S.Ct. 1021. The Supreme Court explained that Rule 41(b)'s use of the phrase "on the merits" only means that the dismissal operates with prejudice, which "is undoubtedly a necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts." *Id.* at 506, 121 S.Ct. 1021. As the Supreme Court's interpretation of RCFC's equivalent in the Federal Rules of Civil Procedure binds the court's interpretation of its counterpart in the Rules of the Court of Federal Claims, RCFC 41(b) does not dispose of the latest complaints.

Notwithstanding Rule 41(b), the Federal Circuit has noted that "principles of merger and bar may apply even though a judgment results by default, consent, or dismissal with prejudice although care must be taken to insure the fairness in doing so." *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n,* 721 F.2d 1305, 1314 (Fed.Cir.1983); *see Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 228, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits."); *Int'l Nutrition Co. v. Horphag Research, Ltd.,* 220 F.3d 1325, 1328–29 (Fed. Cir.2000) ("Contrary to [appellant's] argument, default judgments can give rise to res judicata. [Appellant] therefore cannot avoid the bar of res judicata on the ground that [the earlier] opposition was abandoned and dismissed for failure to prosecute.") (citations omitted); *Woods v. Tsuchiya,* 754 F.2d 1571, 1583 (Fed.Cir.1985) ("If the alternative sanction of a default judgment under Federal Rule of Civil Procedure 37(b)(2)(C) is selected, that judgment has the effect of res judicata.").

In the circumstances of this case, it is more than fair to apply preclusion to *Saladino I.* Plaintiff already had attempted to relitigate the claims that he failed to prosecute when he again filed the complaint in *Saladino II.* After plaintiff's claims had been dismissed twice before, it would not serve the interests of justice, nor would be it be fair to defendant, again to allow plaintiff to proceed with his "discredited and futile claims." Def.'s Mtn. filed Mar. 5, 2004, at 7 n. 9.

*Saladino I* therefore can be offered for res judicata effect if it meets the final requirement: that this action is based on the same set of transactional facts. After noting the various attempts by courts "to bring additional clarity to this standard," the court applied it by asking whether the actions are "based on the same set of factual allegations[.]" *Ammex I,* 334 F.3d at 1056 (quoting definitions such as "core of operative facts," "same operative facts," "same nucleus of operative facts," and "based on the same, or nearly the same factual allegations") (internal quotations omitted). The

instant action seeks relief based on the IRS's alleged procedural deficiencies and improper disallowance of a tax deduction by the Geiersbachs for tax years 1992 through 2000. Defendant characterizes *Saladino I* as a complaint seeking the same relief for the same tax years on behalf of the same nonparty taxpayers. *See* Def.'s Mtn. filed Mar. 5, 2004, at 2.

The complaint in *Saladino I* indeed alleged a right to a refund for tax years 1992 through 2000. *Saladino I,* Compl. filed Aug. 11, 2003, ¶ IV. The taxpayers are also the same. *Id.* at "Pleading Special Matters." [11] Thus, res judicata bars plaintiff from relitigating his—or the Geiersbachs'—claims for tax years 1992 through 2000.

### 2) *Preclusive effects of Saladino II as to plaintiff's prior pleaded claims*

■ *Saladino II* was dismissed for lack of jurisdiction because plaintiff lacked standing to assert a nonparty's claim for a tax refund. *Saladino v. United States,* No. 03–2210T (Fed.Cl. Oct. 3, 2003) (unpubl.). It is well established that a dismissal for lack of jurisdiction does not constitute a final judgment on the merits and therefore has no res judicata effect. *See Media Techs. Licensing, LLC v. Upper Deck Co.,* 334 F.3d 1366, 1369–70 (Fed.Cir.2003) (holding that res judicata does not apply to dismissals based on lack of standing: "Because standing is jurisdictional, lack of standing precludes a ruling on the merits.") [12]; *Schafer v. Dep't of Interior,* 88 F.3d 981, 990 (Fed.Cir.1996) ("This is a decision on the merits which, unlike dismissal for want of jurisdiction, has a *res judicata* effect."); *Vink v. Schijf,* 839 F.2d 676, 677 (Fed.Cir.1988) ("A dismissal for lack of subject matter jurisdiction ... is not a disposition on the merits and thus permits a litigant to refile in an appropriate forum."). The

only possible bar that could be elicited from *Saladino II* would arise from collateral estoppel. The question then becomes whether a plaintiff is collaterally estopped from litigating the question of subject matter jurisdiction and/or standing based on materially indistinguishable allegations in a complaint that a court in a prior action had ruled to be insufficient to establish jurisdiction.

The Federal Circuit recently addressed this issue under slightly different circumstances. In *Ammex II,* 384 F.3d at 1371–72, the Federal Circuit ruled that a sister circuit's determination of a party's standing to pursue a tax refund claim that the party paid to its suppliers and not to the Federal Government collaterally estopped the taxpayer from pursuing the same claim for different tax years in the Court of Federal Claims. While *Ammex II* can be read to give preclusive effect to threshold determinations such as standing, it should be noted that *Ammex II* recognized an appeals court determination to provide the preclusive effect. *See id.*

Even if *Ammex II* does not stand for the broad proposition, ample authority exists for such a result. The *Restatement (Second) of Judgments,* which the Federal Circuit endorses in this context, *Foster,* 947 F.2d at 477 n. 7, explicitly adopts the rules of issue preclusion to dismissals for lack of jurisdiction despite their lack of claim-preclusive effects. *See Restatement (Second) of Judgments* § 20, comment b; *id.* § 12, comment c ("When the question of the tribunal's jurisdiction is raised in the original action, in a modern procedural regime there is no reason why the determination of the issue should not thereafter be conclusive under the usual rules of issue preclusion.").

The Federal Circuit has issued rulings consistent with this result. *See, e.g., Dana v. E.S. Originals, Inc.,* 342 F.3d 1320, 1323

---

11. Plaintiff's complaint in *Saladino I* is divided by separately-captioned "pleadings" bound together. The initial document, entitled "An Application for Habeas Corpus cum Causa Relief Joined With a Motion To Notice Interested Parties," contained the statement of the claim and other broad allegations. Plaintiff also included separate "Pleading Special Matters & Exhibits," which named the Geiersbachs as the taxpayers entitled to the refund.

12. Although the Federal Circuit applied the law of the Ninth Circuit, this statement was set forth as a general proposition derived from Supreme Court precedent, *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 551, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996); under the Federal Circuit's formulation of res judicata, see *Mother's Rest.,* 723 F.2d 1566, the result would be the same.

(Fed.Cir.2003) (applying 11th Circuit law and quoting the *Restatement (Second) of Judgments* § 13, which states that, "for purposes of issue preclusion ... final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect"). In *International Air Response v. United States,* 302 F.3d 1363 (Fed.Cir.2002), for example, the Federal Circuit quoted broad language from a United States Supreme Court case stating that "the 'principles of res judicata also apply to jurisdictional determinations-both subject matter and personal.'" 302 F.3d at 1368 (quoting *Ins. Corp. of Ireland,* 456 U.S. at 702 n. 9, 102 S.Ct. 2099). However, the Federal Circuit applied this language narrowly to rule that the Government could not collaterally attack the issuance of a stay—a judgment on the merits—by now arguing that the prior court lacked jurisdiction to provide the requested relief. *Id.* at 1369 (foreclosing Government from arguing that claim not timely because district court had issued stay under All Writs Act, thereby tolling one-year statute of limitations).[13] Moreover, the language taken from the Supreme Court appeared in the context of a discussion on collateral attacks: "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon on adverse judgment." *See Ins. Corp. of Ireland,* 456 U.S. at 702 n. 9, 102 S.Ct. 2099.

Even without this case law, this court would not be ruling in a legal environment devoid of guidance, as many federal courts preclude parties from relitigating the issue of subject matter jurisdiction or other threshold matters even though the prior dismissal did not adjudicate the merits of the case. *See, e.g., Matosantos Commercial Corp. v. Applebee's Int'l, Inc.,* 245 F.3d 1203, 1209–12 (10th Cir.2001) (prohibiting relitigation of personal jurisdiction); *Cortes v. Intermedics, Inc.,* 229 F.3d 12, 14–15 (1st Cir.2000) (same for jurisdiction on basis of federal preemption); *DiGiore v. Ryan,* 172 F.3d 454, 466 (7th Cir.1999)

(justiciability issues), *overruled on other grounds by Whetsel v. Network Prop. Servs., LLC,* 246 F.3d 897 (7th Cir.2001); *N. Ga. Elec. Membership Corp. v. City of Calhoun,* 989 F.2d 429, 433 (11th Cir.1993) (subject matter jurisdiction); *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980) (jurisdiction); *cf. Okoro v. Bohman,* 164 F.3d 1059, 1062–64 (7th Cir.1999) (allowing party to avoid bar of collateral estoppel from dismissal of prior action ruled frivolous because bar applied only to the precise ground of dismissal). Standing, a threshold matter like jurisdiction, is also entitled to issue-preclusive effect. *See, e.g., Cutler v. Hayes,* 818 F.2d 879, 888–89 (D.C.Cir.1987); *Planned Parenthood Ass'n v. Kempiners,* 700 F.2d 1115, 1138 (7th Cir.1983) (Posner, J., concurring); *McCarney v. Ford Motor Co.,* 657 F.2d 230, 233 (8th Cir.1981); *Mrazek v. Suffolk County Bd. of Elections,* 630 F.2d 890, 896 n. 10 (2d Cir. 1980). *But see Adarbe v. United States,* 58 Fed.Cl. 707, 714 n. 7 (2003) (stating that "[s]ince dismissal for lack of subject matter jurisdiction carries no preclusive effect, the clearly frivolous claim may be brought many times").

In accord with these authorities, this court applies collateral estoppel to "the precise issue of jurisdiction that led to the initial dismissal." *GAF Corp. v. United States,* 818 F.2d 901, 912 (D.C.Cir.1987).

In *Saladino II* Judge Lettow quoted and adopted a previous ruling by Senior Judge Merow, *Ortt v. United States,* No. 03–1945T (Fed.Cl. Aug. 20, 2003) (unpubl.):

> In that case, the plaintiff, Mr. Ortt, sought a refund for two taxpayers whose tax return he prepared. The only substantive difference here is that the basis claimed for Mr. Saladino's standing is his reliance on a power of attorney rather than as tax preparer. In his Order dismissing Mr. Ortt's complaint, Senior Judge Merow explained: "Mr. Ortt is not an attorney admitted to practice before this court. Thus, he cannot file a claim in this court on behalf of the taxpayers concerned. RCFC

**13.** *But see Christopher Vill., L.P. v. United States,* 360 F.3d 1319, 1330–33 (Fed.Cir.2004) (refusing to grant preclusive effect to sister circuit's judgment that issued without jurisdiction by excepting from bar judgments that, if allowed to stand, would "substantially infringe the authority of another tribunal") (quoting *Restatement (Second) of Judgments,* § 12(2)).

83.1(c)(8). To the extent Mr. Ortt is asserting entitlement to a portion of any refund that might be awarded to the taxpayers, any such assignment of the refund claim by the taxpayers to Mr. Ortt, prior to the allowance of the claim, would be invalid." . . .

Similarly, in this case, Mr. Saladino is not an attorney admitted to practice before this Court so he cannot act for the Geiersbachs, nor can he pursue a claim on his own behalf as assignee.

*Saladino v. United States,* No. 03–2210T (Fed.Cl. Oct. 3, 2003) (unpubl.). *Saladino II* thus held that plaintiff's allegations that he was acting under authority from the Geiersbachs' power of attorney and had himself prepared their tax returns does not afford him standing to press the Geiersbachs' claims for refund. This ruling is entitled to issue-preclusive effect, with the consequence that plaintiff cannot relitigate the issue of standing in this subsequent action.

Plaintiff now pursues his previously rejected claims by using his status as a fiduciary in addition to the ineffectual power of attorney. He attaches to the amended complaint an executed IRS Form 56, entitled "Notice of Fiduciary Relationship," which he uses to act as the Geiersbachs' fiduciary for tax years 1992 through 2003 with regard to income tax on their form 1040s. The form names the Court of Federal Claims as the tribunal to which the form should apply and lists this case number, 03–2871T. However, plaintiff makes no argument whatsoever as to how the execution of the IRS Form 56, attached to his amended complaint, might alter his constitutional standing.

While it is generally true that res judicata principles are applied in accord with the grave commitment of doing justice, and thus circumstances can dictate exception, it is also true that the exceptions are narrow. *See Bingaman v. Dep't of Treasury,* 127 F.3d 1431, 1437 (Fed.Cir.1997). Courts warrant exception to preclusion upon the occurrence of a change in the law after the initial judgment or, in some circumstances, upon the discovery of new facts that are materially relevant to the claim or issue. *See Lockheed Aircraft Corp. v. United States,* 192 Ct.Cl. 36, 43, 426 F.2d 322, 326 (1970). The latter is an exception invoked rarely and only when a diligent plaintiff could not have discovered those facts in the earlier action. *See, e.g., Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 914 (7th Cir.1993) (ruling, in part, that plaintiff's action against joint employer not barred by res judicata because plaintiff could not have known that defendant was joint employer until after plaintiff lost prior lawsuit); *Stone v. Williams,* 970 F.2d 1043, 1055 (2d Cir. 1992) (ruling that new evidence that plaintiff was heir of decedent warranted relitigation); *Guerrero v. Katzen,* 774 F.2d 506, 508 (D.C.Cir.1985) (refusing to apply the exception when party could have sought rehearing or reopening of record in prior action).

Even assuming, *arguendo,* that plaintiff's submission of the Form 56 would provide him with standing or have any other material effect, it would do an injustice to the integrity of the court and to the Government's legitimate interest in finality to allow plaintiff to attempt to pursue his claim by asserting iterations of a documented or undocumented legal relationship in successive complaints until he found one that might appeal. Plaintiff cannot avoid res judicata and collateral estoppel by putting forth another statute or asserted legal relationship to masquerade his claims that otherwise have been barred by lack of standing. "This would unnecessarily burden the government, private litigants and the judiciary, as well as cause untold confusion." *Ammex II,* 384 F.3d at 1372 (citing *Montana v. United States,* 440 U.S. 147, 153– 54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), in which the Supreme Court stated that res judicata "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions"). At argument defendant termed this the "Oops!" argument: Plaintiff files another complaint on his own behalf, or that of another taxpayer; the Government establishes that the claimed basis for standing lacks any semblance of merit and that plaintiff cannot establish jurisdiction over his claims; and plaintiff is permitted to say "oops" and file again.

Because the Court of Federal Claims previously ruled that plaintiff lacked standing and dismissed plaintiff's claims for tax refunds owed to the Geiersbachs, the identical basis upon which jurisdiction is alleged has been decided and is entitled to preclusive effect.[14] Plaintiff's new allegation of his status as a fiduciary does not change this result.

### 2. Plaintiff's standing regardless of res judicata

Even were this court to rule that *Saladino I* does not preclude plaintiff's prior pleaded claims and that *Saladino II* does not collaterally estop relitigation of plaintiff's standing, defendant's motion to dismiss plaintiff's claims based on lack of standing would prevail.

Standing stems from Article III's limitation on "the federal judicial power to the resolution of actual 'cases' or 'controversies.'" *Anderson v. United States*, 344 F.3d 1343, 1349 (Fed.Cir.2003) (quoting U.S. Const. art. III, § 2). It is a threshold jurisdictional question and must be established by the party seeking to invoke this court's jurisdiction. *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir. 2002). Standing stems from the case or controversy requirement of Article III, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), and it applies to Article I courts that exercise the judicial power of the United States, *Anderson*, 344 F.3d at 1350 n. 1.

■ This constitutional requirement ensures that the plaintiff is the proper person or entity bringing the suit, and plaintiff must therefore assert a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Where a plaintiff asserts the injury of another, plaintiff must overcome a presumption against third-party standing. *See Miller v. Albright*, 523 U.S. 420, 445, 118

S.Ct. 1428, 140 L.Ed.2d 575 (1998) (O'Conner, J. & Kennedy, J., concurring). Nevertheless, third-party standing is authorized in limited circumstances:

> The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute, the litigant must have a close relation to the third party, and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (quoting *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)).

■ Plaintiff neither makes nor attempts a showing that any of the requirements of third-party standing are present here. Rather, in his amended complaint, plaintiff relied on allegations that he is the Geiersbachs' power of attorney, their fiduciary, and an assignee of their claims. As defendant correctly argues, the purported assignment is invalid, as the Anti–Assignment Act, 31 U.S.C. § 3727 (2000), explicitly prohibits such assignments of claims against the United States: "An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued."

At argument plaintiff simply waived a white flag as a demurrer to all of defendant's arguments and asked for a voluntary dismissal, hoping to avoid a ruling in *Saladino III*. He took the position that, because the previous judge did not rule on the motion to dismiss and considerable time had passed, he could elude a ruling. Plaintiff thus agrees with defendant that he lacks standing to assert claims of others; he seeks to avoid a ruling in *Saladino III* because that would foreclose him from reframing his claims relating to the Geiersbachs.

In sum, plaintiff's claims asserting a tax refund on behalf of the Geiersbachs (1) are precluded by virtue of *Saladino I*; (2) fail

---

**14.** This court notes that Judge Lettow summarily dismissed *Saladino II* on the issue of standing. However, not only does plaintiff not argue that he lacked a "full and fair opportunity to litigate,"

*Dana*, 342 F.3d at 1324 (applying this requirement of collateral estoppel), but plaintiff even conceded during oral argument in this case that he had no standing.

under RCFC 12(b)(6) because plaintiff cannot relitigate his lack of standing by virtue of *Saladino II;* and (3) fail because plaintiff does not have standing even apart from the preclusive effect of *Saladino II.*

### 3. *Defendant's motion to dismiss plaintiff's new claims in Saladino III for violation of due process and for a takings*

Plaintiff's amended complaint appears to seek relief for the Government's violation of his or the Geiersbachs' rights to due process. Plaintiff alleges that "[t]he claim for relief is that insufficiency of process exists to address the refund proceeding." Am. Compl. 8, ¶ II.c. It is alleged that the Secretary of the Treasury provided insufficient process to plaintiff when the Secretary denied the Geiersbachs' claims for a refund.[15] Plaintiff also alleges that the denial of a refund constituted a taking.

Defendant argues that plaintiff lacks standing to pursue these claims on the Geiersbachs' behalf and is collaterally estopped from arguing otherwise. In addition, defendant asserts that jurisdiction is lacking with respect to plaintiff's Fifth Amendment due process and takings claims. It is not clear whether plaintiff asserts relief solely based on violations of the Geiersbachs' due process rights and their rights to just compensation, or whether plaintiff is asserting that the denial of the refund and the alleged insufficient process violated his own due process rights and his right to just compensation.

Regardless of this distinction, the two branches of res judicata could foreclose plaintiff from asserting these new claims. First, the claim-preclusive effects of *Saladino I* extend beyond the more limited bar of collateral estoppel, to wit, res judicata prohibits plaintiff from filing not only the same claim previously adjudicated, but also any claim "based on the same set of transactional facts as the first[,]" *Ammex I,* 334 F.3d at 1055. Second, the issue-preclusive effects of *Saladino II* prevent relitigation of standing, provided that the issue is identical. *Ammex II,*

384 F.3d at 1371. Because plaintiff's tortured allegations could be construed to raise new claims, the court proceeds to test the substance of the new claims against the court's jurisdiction.

The Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), to adjudicate claims for monetary relief against the United States. To properly invoke this jurisdiction, plaintiff must assert a violation of a money-mandating law. *Fisher v. United States,* 364 F.3d 1372, 1376 (2004). An alleged violation of the due process clause does not "mandate payment of money by the government" and is therefore not subject to this court's jurisdiction. *James v. Caldera,* 159 F.3d 573, 581 (Fed. Cir.1998); *LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995).

The Court of Federal Claims possesses jurisdiction over claims alleging violation of the Fifth Amendment's takings clause if the underlying action is not challenged as unlawful, *see El–Shifa Pharm. Indus. Co. v. United States,* 378 F.3d 1346, 1353 (Fed.Cir.2004). Here, plaintiff is asserting that taxing gross income constitutes an improper tax collection. *But see U.S. Shoe Corp. v. United States,* 296 F.3d 1378, 1383 (Fed.Cir.2002). In any event, imposition of the federal income tax does not constitute a taking under the Fifth Amendment. *Id.* at 1383. Plaintiff's efforts to avoid the settled law by claiming that wages received from a non-profit properly qualify as a deduction are, as defendant characterized them in response to the same claims presented in *Saladino IV,* "another articulation of the frivolous contention—universally rejected—that wages somehow escape income tax." Def.'s Mtn. filed Aug. 25, 2004, in *Saladino IV,* at 7 (citing cases including *Ledford v. United States,* 297 F.3d 1378, 1381–82 (Fed.Cir. 2002)).

### 4. *Plaintiff's motion(s) to amend the complaint in Saladino III*

In connection with defendant's motion for sanctions and its motion to dismiss,

---

15. Plaintiff's original complaint, not before this court, sought damages, which include, as best as this court understands, compensation for the

work he performed or otherwise provided to the Geiersbachs and damages to his reputation as a tax professional.

plaintiff filed what this court understands as a motion to file an amended complaint. A party may amend its pleadings by motion or by consent of the adverse party, "and leave shall be freely given when justice so requires." RCFC 15(a). Notwithstanding the liberal standard in granting such motions, leave to amend a complaint should not be granted when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (discussing Fed.R.Civ.P. 15(a)); *Leider v. United States*, 301 F.3d 1290, 1299 n. 10 (Fed.Cir.2002); *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed.Cir.1989). Because plaintiffs' claims are barred by res judicata or collateral estoppel and otherwise do not come within the court's jurisdiction, any further amendment would be futile and would not serve the interests of justice; indeed, the interests of justice would be disserved by allowing this travesty to continue.[16]

### III. *Defendant's motion to dismiss Saladino IV*

Similar to *Saladino III*, plaintiff's method of pleading in *Saladino IV* "appears to be the type known colloquially as 'throw—as—much—mud—against—the—wall—as—you—can—and—hope—some—of—it—sticks.'" *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1158 (10th Cir.1991).

Plaintiff filed a complaint in the now-consolidated action, No. 04–1367T, on August 20, 2004. Five days later, plaintiff filed an amended complaint on the same date that defendant filed its motion to dismiss the action. Per the allegations in the amended complaint, plaintiff seeks relief for "erroneous and excessive Notices of Deficiency, liens, levies and other penalties." Am. Compl. for Review filed Aug. 25, 2004, ¶ II. Again, the thrust of this complaint disputes the IRS's alleged improper taxation for not-for-profit activities. Plaintiff asserts these claims on behalf of taxpayers, his putative "clients," *id.* ¶ IX, although, unlike his amended complaint in *Saladino III*, he does not name the taxpayers.[17]

In addition, plaintiff appears to assert a claim to a refund on his own behalf: "The plaintiff caused to be prepared or is causing to be prepared a composite return making either refund or credit claims for income taxes on his own behalf and for clients." *Id.* ¶ IX. Apart from this allegation, however, the entirety of the amended complaint only asserts the relief that would be owed his clients: "tax liabilities for plaintiff herein due to a fiduciary relationship between the plaintiff and his clients." *Id.* ¶ XVI. Plaintiff also contends that the "IRS is taxing gross income which includes fees transferred and/or due from clients of the plaintiff." *Id.* ¶ XVII. In addition, plaintiff appears to claim a violation of due process: "Due process is allowance of the claim or an explanation by the Internal Revenue Service." *Id.* ¶ XIV. Plaintiff asks the court to review the administrative record after his administrative ap-

---

16. The "second amended complaint" in *Saladino III*, lodged with the Clerk of the Court on September 7, 2004, attempts to plead jurisdiction under 28 U.S.C. § 1346(a)(1) (2000), and 5 U.S.C. § 702 (2000). Plaintiff also alleges that he "caused to be prepared or is causing to be prepared a composite return making either refund or credit claims for income taxes on his own behalf and for clients." Second Am. Compl., lodged Sept. 7, 2004, ¶ IX. He claims that "[t]here is no basis in law for taxing gross income." *Id.* ¶ XIX. However, he further explains that he is seeking a stay of the IRS's "collection actions pending exhaustion of administrative and litigation appeal rights[,]" and "review of the administrative record after due process in administrative appeal; if appeal is required." *Id.* ¶¶ XXV–XXVI. Plaintiff alleges that further notices of deficiency, penalties, fines and interest have been accruing against his clients, and that he was prosecuting an administrative appeal within the IRS.

Defendant filed an opposition brief to plaintiff's motion for leave to file a second amended complaint in *Saladino III* arguing, under Rule 15(a), that justice does not require granting plaintiff's motion for leave to amend. Defendant contends that the proposed amended complaint is frivolous and redolent of plaintiff's complaint in *Saladino IV*. Defendant also argues that the proposed amended pleading "would completely change the cause of action ... after defendant's motion to dismiss has been fully briefed" by now seeking relief on his own behalf, in addition to clients whose names have been dropped from the pleading. Def.'s Br. filed Sept. 8, 2004, at 2.

17. Plaintiff's subsequent filings identity Leon D. and Grace J. Behnke as the taxpayers.

peal, as well as to issue a stay pending the administrative review.

The sequence of filings related to defendant's motion to dismiss *Saladino IV* is similar to *Saladino III*. Defendant moved to dismiss plaintiff's complaint on August 25, 2004. Plaintiff filed his opposition on September 22, 2004, entitled "Plaintiff's Opposition to Defendant's Motion for Sanctions and Defendant's Motion To Dismiss and Opposition to Plaintiff's 'Motion for Stay' and Plaintiff's Motion for Review of the Administrative Record." Plaintiff included with this filing, captioned separately, a document entitled "Statement of Facts," which this court understands to be an attempt to provide further jurisdictional allegations, including factual assertions and additional statutory bases, to respond to defendant's arguments. Such an attempt can only be considered a lodged "second amended complaint," in light of plaintiff's previously filed amended complaint, filed August 25, 2004. On September 28, 2004, plaintiff then filed an amended version of his opposition documents,[18] which also included further factual allegations and statutory bases for jurisdiction.[19]

Defendant moved to dismiss plaintiff's amended complaint for various "fatal threshold matters," including standing and subject

matter jurisdiction, advancing several arguments with respect to plaintiff's shotgun attempts at establishing jurisdiction. Def.'s Mtn. filed Aug. 25, 2004, at 6. Plaintiff's specific allegation for jurisdiction, as alleged in his amended complaint, is based on 28 U.S.C. § 1346(a)(1) (2000), although he alleges that "[t]he statutory authority for the suit is Title 26 U.S.C. § 6212(a) as the claim for relief is founded on erroneous and excessive Notices of Deficiency, liens, levies and other penalties." Am. Compl. for Review ¶¶ I–II. Additional alleged statutory authority is 5 U.S.C. § 702.

This court has carefully sifted through plaintiff's bulk opposition papers, ferreting out plaintiff's frivolous attacks on defense counsel[20] and plaintiff's additional factual "allegations" that are not properly before this court, to extract—as best as can be done—plaintiff's actual responsive arguments.

To address the obvious first: Insofar as plaintiff is claiming any relief on behalf of any nonparty, plaintiff lacks standing to do so for the reasons discussed in this court's ruling on defendant's motion to dismiss *Saladino III*. What remains from the face of the amended complaint are plaintiff's claims for a

18. This filing includes the following documents: (1) "Plaintiff's Amended Opposition to Defendant's Motion for Sanctions and Defendant's Motion To Dismiss and Opposition to Plaintiff's 'Motion for Stay' and Plaintiff's Motion for Review of the Administrative Record[;]" and (2) "Amended Affidavit and Statement of Facts" (cited as "Am. Aff. and Statement of Facts").

19. Defendant's motion challenged the sufficiency of the jurisdictional allegations in the complaint. Plaintiff's responses, including his opposition and the amendment to his opposition, both included a "statement of facts." Both "statements of facts" were executed under penalty of perjury, but the second also was notarized. The amended version's notarized statement of facts, entitled "Amended Affidavit and Statement of Facts," does not provide evidence to support the truth of the factual allegations contained in the amended complaint, but, instead, contains new factual assertions and statutory bases for jurisdiction. Because defendant only made a facial challenge to the complaint, and because the affidavit contains new factual assertions that plaintiff hopes will avoid defendant's argument, this court construes this filing as an attempt to further amend plaintiff's previously amended complaint.

RCFC 15(a) prohibits plaintiff from amending his pleadings more than once prior to the filing of a responsive pleading without first receiving leave from the court or consent of the adverse party. As plaintiff already filed an amended pleading, plaintiff's failure to seek leave from this court to amend renders his attempted addition of new allegations ineffectual. Insofar as plaintiff's filing seeks leave to file the lodged amendments to the pleadings, his motion is denied.

20. Plaintiff asserts that defense counsel "lied and misrepresented numerous material facts to this Court[,]" Pl.'s Br. filed Sept. 28, 2004, at 1; "has created false argument/claims[,]" *id.* at 2; and "does not have a properly executed oath of office or the statutory authority to represent both the United States and the United States of America[,]" *id.* Plaintiff moves this court to "order [defense counsel] to stand mute until a determination is made by the IRS Appeals Office[,]" *id.* at 3; or, "in the alternative," for an order requiring defense counsel "to show cause why his responsive pleadings/motions are not a trespass on this instant case[,]" *id.* This court denies all of plaintiff's frivolous motions or requests to order defense counsel, personally, to do anything.

refund owed to himself and for a violation of his own due process rights.

Regarding his due process claim, plaintiff clarified in his opposition that he did not rely on the Fifth Amendment in his pleadings: "No such record exists in Plaintiff's pleadings in this instant case wherein Plaintiff makes reference to 'due process' in a way as to make any Fifth Amendment reliance thereon, as claimed by [defense counsel]." Am. Aff. and Statement of Facts, ¶ 19. Even without this clarification, this court would conclude that jurisdiction is not present under the Tucker Act, 28 U.S.C. § 1491(a)(1), to entertain a due process claim, as discussed with respect to plaintiff's claims in *Saladino III*.

Plaintiff's sole remaining claim is for a tax refund owed to himself. Here, too, plaintiff provides assistance by disclaiming what this court wrested from the amended complaint: "No such record exists in Plaintiff's pleadings in this instant case wherein Plaintiff makes a claim for money damages as claimed by [defense counsel]." Am. Aff. and Statement of Facts, ¶ 20. Defendant comments that "[plaintiff] has misunderstood defendant's contentions; but in any event his apparently inadvertent candor makes unmistakable this Court's lack of jurisdiction over his complaint[.]" Def.'s Br. filed Sept. 28, 2004, at 2. And, of course, defendant is correct.

Without a claim for monetary relief, plaintiff cannot establish jurisdiction in the Court of Federal Claims. Plaintiff's only argument appears to be that he is not asking for any monetary relief at this time. Rather, he argues that an appeal is currently pending before the IRS regarding his claims—and his clients' claims—for a refund. According to his amended complaint, he seeks an injunction staying collection actions while his administrative appeal is pending. Plaintiff also seeks review of his appeal after its termination, which seems consistent with the allegations in the amended complaint that plaintiff seeks a refund—which he now denies.

Without addressing why such a claim would fail on ripeness grounds, suffice it to note that plaintiff's abjuration of any monetary relief prevents this court from exercising jurisdiction in the first place. Insofar as he is seeking an injunction on the pending collection activities and review thereafter, the Anti–Injunction Act, 26 U.S.C. § 7421(a) (2000), as defendant explains, bars such relief, and 26 U.S.C. § 6213 (2000), provides exclusive review of the Notices of Deficiency in the Tax Court.[21]

A final point regarding plaintiff's attempt at establishing standing is that plaintiff uses the term "composite [income tax] return" as a basis for standing. *See* Am. Compl. for Review ¶ IX. Plaintiff appears to make yet another attempt to address standing by, as defendant explains, "consider[ing] himself a 'taxpayer' here by virtue of filing supposed 'composite returns' with his customers[.]" Def.'s Br. filed Sept. 28, 2004, at 5. Plaintiff provides no explanation of what he means by the term "composite return," but defendant opines that the source of the term "composite return" is found in 26 C.F.R. § 1.6012–5 (2004) ("Composite return in lieu of specified form"). This regulation authorizes the Commissioner to allow a taxpayer to file a composite return in lieu of any specified form which can be "the returns of more than one such person." 26 C.F.R. § 1.6012–5. Defendant concludes that even if plaintiff properly had alleged that he received such authorization from the Commissioner, "[t]he mode of filing would alter neither the jurisdictional rules of Title 26 for tax refund suits ... nor this Court's rule (RCFC 83.1(a)) providing that only attorneys may represent others[.]" Def.'s Br. filed Sept. 28, 2004, at 6 n. 9. Plaintiff does not rebut this argument, and this court finds no basis in law for the filing of a composite return to cure want of constitutional standing.[22]

## CONCLUSION

Accordingly, based on the foregoing,

---

21. After defendant repeatedly pointed out that all actions relating to notices of deficiency must be brought in the Tax Court, plaintiff inanely persists in citing to the administrative proceedings provision, 26 U.S.C. § 6212, which discusses the notices themselves.

22. In view of the foregoing ruling on plaintiff's lack of standing, it is unnecessary to list the other statutes and theories that plaintiff throws at the court to support jurisdiction.

IT IS ORDERED, as follows:

1. Defendant's motion to dismiss the amended complaint in No. 03–2871T is granted, and the Clerk of the Court shall enter judgment for defendant with respect to claims for refund or credit owed to any non-party taxpayer. Claims for just compensation under the Fifth Amendment and for a denial of due process rights shall be dismissed without prejudice for lack of subject matter jurisdiction.

2. Defendant's motion to dismiss the amended complaint in No. 04–1367T is granted, and the Clerk of the Court shall enter judgment for defendant dismissing the amended complaint without prejudice for lack of subject matter jurisdiction.

3. Plaintiff's motions for leave to file an amended complaint, for stay, for injunctive relief, and all other outstanding motions in both 03–2871T and 04–1367T are denied.

4. Because these cases have been prosecuted by plaintiff without a scintilla of basis in the law and have no discernible basis in fact, and because plaintiff has abused the court's process by failing to respond in good faith or with a plausible legal or factual argument to defendant's motions to dismiss, the undersigned shall review any pleading filed by plaintiff of any nature whatsoever seeking relief, on plaintiff's own or another's behalf, for frivolous jurisdictional allegations before it is assigned to a judge of the court.

5. Defendant is directed henceforward to make no response to any paper filed by this plaintiff in any new action unless ordered to do so by order of the court. Defendant is assured that it will not be defaulted in any such case that is filed after this date. If the court determines that defendant should answer or respond by motion to a new complaint, it will be notified. Otherwise, the prescribed times for answers, motions, or other briefings are to be deemed suspended indefinitely.